# Illinois Official Reports

## Appellate Court

***Zabaneh Franchises, LLC v. Walker*, 2012 IL App (4th) 110215**

| | |
|---|---|
| Appellate Court Caption | ZABANEH FRANCHISES, LLC, an Illinois Limited Liability Company, Plaintiff-Appellant, v. TERRI M. WALKER, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket Nos. 4-11-0215, 4-11-0309 cons. |
| Argued | June 19, 2012 |
| Filed | July 7, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The restrictive covenants in the employment agreement defendant signed with an income tax preparation service were enforceable and the agreement did not constitute a contract of adhesion, since the covenants were no greater than what was necessary to protect plaintiff's legitimate business interest, undue hardship was not imposed on defendant, and the public was not injured. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-CH-233; the Hon. John Schmidt, Judge, presiding. |
| Judgment | Reversed and remanded. |

| | |
|---|---|
| Counsel on Appeal | Andrew O. Mays (argued), of Mays, Walden & Anastas, P.C., of Quincy, for appellant. |
| | Patrick James Smith (argued), of Delano Law Offices, LLC, of Springfield, for appellee. |
| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion. Justices Steigmann and Cook concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Zabaneh Franchises, LLC, appeals from the circuit court's order dismissing the case with prejudice because plaintiff had failed to prove it would likely succeed on the merits of its complaint in enforcing the restrictive covenants contained in an employment agreement (Agreement) signed by defendant Terri M. Walker. The court entered an oral judgment on February 23, 2011, at the conclusion of the hearing on plaintiff's motion for a temporary restraining order (TRO). Plaintiff appealed the court's oral judgment. This court docketed the appeal as case No. 4-11-0215.

¶ 2    The circuit court subsequently entered a written judgment consistent with its oral pronouncement. Plaintiff appealed from the court's written judgment as well. This court docketed plaintiff's subsequent appeal as case No. 4-11-0309. We consolidated the appeals and now reverse and remand for further proceedings.

¶ 3                              I. BACKGROUND

¶ 4    Plaintiff, which has its principal place of business in Quincy, is a firm providing income-tax-form preparation services. In July 2010, plaintiff purchased the franchise of H&R Block, Inc., in Springfield, including all interest in the employment and noncompetition agreements with H&R Block's employees, of which defendant was one. Defendant had signed an employment agreement with H&R Block in November 2009, as she had done every year since 2003, and agreed to work during "tax season," or January 2, 2010, through April 15, 2010. The Agreement included an "assignability" clause, wherein defendant agreed that the noncompetition and nonsolicitation covenants would survive the termination of the Agreement and that H&R Block could assign the contract "without notice to, consent by, or approval by" defendant. Plaintiff alleged in its complaint that defendant, within a few months of leaving the firm in April 2010, started her own tax-preparation business, solicited clients, and hired employees of H&R Block in violation of the employment agreement.

¶ 5    In February 2011, plaintiff filed its complaint for injunctive relief, wherein it sought a

-2-

permanent injunction, a preliminary injunction, and a TRO. Plaintiff also filed a separate motion for a TRO and preliminary injunction. Defendant filed a motion to dismiss, denying that she had entered into an employment agreement with plaintiff or was ever employed by plaintiff. (There was no allegation in the original complaint explaining the relationship between plaintiff and H&R Block.)

¶ 6 On February 23, 2011, the circuit court conducted a hearing on plaintiff's motion for temporary relief. We have no record of that hearing: no transcript, bystander's report (Ill. S. Ct. R. 323(c) (eff. Dec. 13, 2005)), or agreed statement of facts (Ill. S. Ct. R. 323(d) (eff. Dec. 13, 2005)). According to the docket entry, the following occurred:

> "Matter called for hearing. Present the plaintiff by attorney Andrew Mays. Present the defendant Terri Walker with attorney Patrick Smith of Delano Law Office. Defendant's motion to dismiss denied, plaintiff's motion to file amended complaint allowed. Matter now called for hearing on the TRO. Plaintiff's motion for a TRO denied, see written order. Copy of this docket to all parties of record."

Five days after the hearing, plaintiff filed a first amended complaint, adding the allegation that plaintiff had purchased the H&R Block franchise in July 2010.

¶ 7 On March 9, 2011, plaintiff filed a notice of appeal (without citing a rule governing the appeal), indicating it was appealing the oral judgment entered on February 23, 2011, "denying motion for injunction and dismissing the case." On March 18, 2011, plaintiff intended to file a motion to correct the circuit court's docket entry, but the motion was received by the Sangamon County State's Attorney's office and not filed with the circuit clerk until March 23, 2011. Nevertheless, plaintiff's motion requested the docket entry dated February 23, 2011, be amended to "accurately reflect the ruling of the court" by stating that the court had dismissed the lawsuit because the underlying contract was "not enforceable." Plaintiff also asserted that "[t]his was to be a 'final and appealable order.' "

¶ 8 On March 23, 2011, plaintiff filed with the circuit court a motion to voluntarily dismiss appeal No. 4-11-0215 pursuant to Illinois Supreme Court Rule 309 (eff. Feb. 1, 1981). No action was taken on this motion and the appeal remained pending. Also on March 23, 2011, the circuit court entered a written order as follows:

> "Plaintiff is an H&R Block franchise in the business of preparing tax returns. Defendant is a former employee of the franchise. As a condition of her employment[,] she was required to enter into a contract whereby she agreed that[,] upon termination of her employment[,] to not engage in the business of tax preparer for a period of 2 years. Plaintiff's exhibit A. Plaintiff believed the defendant was doing tax returns under a new business name. Plaintiff brought this motion for a temporary restraining order claiming defendant was in violation of her contract and requested this court to enforce the contract, enter an order prohibiting her from soliciting business from any former or current H&R Block customers.
>
> A temporary restraining order is an extraordinary measure and should be granted with caution. A party is entitled to a temporary restraining order where they show a clear ascertainable right that needs protection, will suffer irreparable harm without relief, has no other adequate remedy at law, and is likely to succeed on the merits. *Prairie Eye*

*Center v. Butler*, 305 Ill. App. 3d 442 (4th Dist. 1999)[.] Finally, the court must balance the equities in granting the injunction against the consequences of not granting the injunction. All the elements must be proven for the plaintiff to succeed.

The plaintiff failed to prove he was likely to succeed on the merits. While the plaintiff only had to raise a fair question to succeed on the merits[,] he completely failed to do so in this cause. The plaintiff relied on the contract he entered into with the defendant as proof of success on the merits. The contract, by plaintiff's counsel's own admission, is a contract of adhesion. The defendant was told to sign the contract if she wanted employment with the plaintiff. There was no negotiation between the parties as to the terms contained in the contract. There was no negotiation as to the amount the defendant would be paid. Again, sign the contract with all the terms or no work for H & R Block. In sum[,] there was no meeting of the minds. As such, the plaintiff was unsuccessful in proving a likelihood of success on the merits.

Wherefore[,] the plaintiff's motion for a temporary restraining order is denied."

The circuit court also granted plaintiff's motion for a corrected docket entry, finding as follows: "Order dated [March 23, 2011,] is a corrected docket entry for [February 23, 2011]. See written order."

¶ 9    On April 11, 2011, plaintiff filed its second notice of appeal (case No. 4-11-0309), indicating it was appealing the order filed on March 23, 2011, "denying motion for injunction and dismissing the case." After our review of the record, we determined there was no appealable order in this case. We remanded for the filing of such order. *Zabaneh Franchises, LLC v. Walker*, Nos. 4-11-0215, 4-11-0309 (Nov. 4, 2011) (remand order).

¶ 10    On January 12, 2012, the trial court entered a written order dismissing the case with prejudice. Upon receipt of the final order, we consolidated the appeals for purposes of review.

¶ 11                                    II. ANALYSIS

¶ 12    Plaintiff presents two issues for this court's review: (1) whether the trial court erred in dismissing the verified complaint with prejudice; and (2) whether the court erred in denying plaintiff's motion for a preliminary injunction. Plaintiff insists the covenants in the Agreement are reasonable and enforceable and, therefore, the trial court erred in concluding that plaintiff was unlikely to succeed on the merits. In contrast, defendant contends the contract terms are "unconscionable" and "overreaching," insisting that an agreement to work for 104 days does not support a restrictive covenant of one and two years, as the Agreement provides.

¶ 13    We review a trial court's dismissal of a complaint *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). As defendant notes, the court's dismissal was not based on the sufficiency of the complaint but, instead, was based on the court's belief that the underlying contract was unenforceable. We are mindful of the principle that a complaint should not be dismissed unless it is clear that no set of facts can be proved which would entitle plaintiff to relief. *Canel v. Topinka*, 212 Ill. 2d 311, 318 (2004).

¶ 14　　In this appeal, for the first time, plaintiff attempts to rely on Missouri law to support its position that the restrictive covenants are enforceable. Plaintiff asserts that the employment agreement contains a choice-of-law provision, in which the parties agreed to be governed by the law of the State of Missouri. However, because plaintiff filed a lengthy memorandum of law in support of its motion for a TRO and preliminary injunction in the circuit court, extensively citing and relying only upon authority from Illinois, we find plaintiff has waived its right to rely on the choice-of-law provision set forth in the Agreement. See *Ellman v. Ianni*, 21 Ill. App. 2d 353, 361 (1959) ("a condition or provision of the contract may, generally, be waived by the party thereto who is entitled to receive the benefit of the condition").

¶ 15　　Contrary to plaintiff's assertion in its reply brief, plaintiff cited Illinois cases not only in support of the "procedural," preliminary-injunction argument, but also in support of the "substantive issues" relating to the enforceability of the covenants. We note that, although plaintiff cites Missouri cases as authority, it concedes that the choice-of-law provision in the Agreement is "of little consequence" in this case because Illinois and Missouri law are "essentially the same with respect to the enforcement of a non-compete agreement." See *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007) ("A choice-of-law determination is required only when a difference in law will make a difference in the outcome."). Nevertheless, to the extent there is a conflict between the law of the two states, because we find plaintiff abandoned the choice-of-law provision, we disregard plaintiff's citations to Missouri authority and we rely solely on Illinois law.

¶ 16　　The Agreement at issue in this case contains the following provisions:

"**10. Post-Termination Covenants.**

a) Associate covenants that for two (2) years following the cessation of Associate's employment hereunder for any reason (the 'Restricted Period'), Associate shall not directly or indirectly:

(1) Provide any of the following services to any Company Client: (i) preparation of tax returns; (ii) electronic filing of file [*sic*] tax returns; or (iii) any Alternative Products or Services;

\* \* \*

**11. Nonsolicitation of Employees.**

Associate covenants that during Associate's employment hereunder and for one (1) year following the cessation of such employment for any reason, Associate shall not, directly or indirectly, solicit or hire Company Employees to work in any business that provides any product or services in competition with the Company."

A "Company Client" is defined as "every person or entity whose federal or state tax return was prepared or electronically transmitted by Associate \* \* \* during the term of this Agreement or during any period of time in which Associate was employed by the company or an affiliate during the twelve (12) months immediately preceding the effective date of this Agreement."

¶ 17　　The primary goal of interpreting a contract is to give effect to the intent of the parties. *Air*

*Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999). Generally, in determining whether restrictive covenants are enforceable as a matter of law, courts look to the relationship and status of the contracting parties.

> "Illinois courts favor fair competition in business and do not encourage restraints of trade; therefore, restrictive covenants are closely scrutinized. [Citation.] Valid consideration, on the part of both parties, is one of the essential requirements for the formation of a contract; an executory contract without consideration is unenforceable either at law or in equity. [Citation.] Continued employment for a substantial period, however, is sufficient consideration to support an employment agreement." *Agrimerica, Inc. v. Mathes*, 199 Ill. App. 3d 435, 441-42 (1990).

¶ 18    Plaintiff admits that the Agreement is a contract of adhesion but claims such a characteristic does not affect the enforceability of the terms in this employment agreement. Our supreme court recently addressed the proper standard in analyzing the enforceability of restrictive covenants in an employment agreement. *Reliable Fire Equipment Co. v. Arrendondo*, 2011 IL 111871, ¶¶ 16-18. Prior to *Reliable Fire*, courts sometimes applied the analytical structure of the legitimate-business-interest test (LBI test) rather than concentrating on the reasonableness of limitations. The LBI test as utilized by the appellate court for the past 30-plus years developed into the *sine qua non* to determine the enforceability of a covenant not to compete. *Reliable Fire*, 2011 IL 111871, ¶ 38. The LBI test held that an employer had a protectible interest that could be safeguarded by a restrictive covenant in only two circumstances: (1) where the employee acquired confidential information from the employer during his or her tenure, or (2) where the employer had near-permanent customer relationships. *Nationwide Advertising Service, Inc. v. Kolar*, 28 Ill. App. 3d 671, 673 (1975). As part of the second factor of the LBI test, a seven-factor subtest emerged, which provided factors that a court could analyze to determine whether the employer possessed a near-permanent relationship with its customers. See, *e.g.*, *Hanchett Paper Co. v. Melchiorre*, 341 Ill. App. 3d 345, 352 (2003). It is this rigid, factor-driven structure that our supreme court rejected in *Reliable Fire*.

¶ 19    Instead, the court held that the enforceability of a restrictive covenant should be determined under the "three-dimensional rule of reason," which provides as follows:

> "A restrictive covenant, assuming it is ancillary to a valid employment relationship, is reasonable only if the covenant: (1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee, (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public." *Reliable Fire*, 2011 IL 111871, ¶ 17.

¶ 20    The supreme court also overruled this court's decision in *Sunbelt Rentals, Inc. v. Ehlers*, 394 Ill. App. 3d 421, 431 (2009), which held that courts should evaluate only the time-and-territory restrictions contained in restrictive covenants. The supreme court disagreed, finding that the employer should still be required to demonstrate a protectible interest. *Reliable Fire*, 2011 IL 111871, ¶ 29. After overruling *Sunbelt*, the supreme court went on to hold:

> "The common law, based on reason and experience, has recognized several factors and subfactors within the component of the promisee's legitimate business interest.

However, we hold that such factors are only nonconclusive aids in determining the promisee's legitimate business interest, which in turn is but one component in the three-prong rule of reason, grounded in the totality of the circumstances. *** We expressly observe that appellate court precedent for the past three decades remains intact, but only as nonconclusive examples of applying the promisee's legitimate business interest, as a component of the three-prong rule of reason, and not as establishing inflexible rules beyond the general and established three-prong rule of reason." *Reliable Fire*, 2011 IL 111871, ¶¶ 41-42.

Though *Reliable Fire* was decided after the trial court's judgment was entered in this case, we find the analysis should be applied retroactively because the case did not establish a new principle of law but merely further explained the law in this area. See *Tosado v. Miller*, 188 Ill. 2d 186, 197 (1999).

¶ 21　Applying the totality of the circumstances as specified in *Reliable Fire*, we determine the reasonableness of the restrictive terms set forth in the Agreement in light of the competing interests between the unfair restraint of the employee's trade and the employer's interest in protecting proprietary information. The noncompetition covenants in the Agreement prohibit defendant, for two years after the cessation of employment, from preparing tax returns for "any Company Client." As defined in the Agreement, a "Company Client" is limited to those individuals who had their tax return prepared by defendant herself. This covenant does not prohibit defendant from preparing taxes or providing related services to the general public, or to plaintiff's or H&R Block's clients generally. She is only prohibited from serving those clients she serviced while employed by plaintiff. This limited restriction reasonably balances defendant's right to earn a living with plaintiff's right to protect its customer relationships and its investment in developing defendant's skills.

¶ 22　There does not seem to be a restriction on the geographical scope of the covenants in the Agreement; however, we find such a restriction unnecessary due to the restriction regarding the limited prohibited customer base. Because the Agreement identifies which customers are considered off-limits to defendant for two years, a prohibited geographical area is unnecessary. The Agreement only prohibits defendant from servicing H&R Block's clients whom she serviced while employed at H&R Block or employed by plaintiff. Further, the less-restrictive covenant of prohibiting defendant from hiring H&R Block employees for one year is likewise reasonable.

¶ 23　We find the limited restrictions, in terms of the prohibited activity and duration, in context of the totality of the circumstances, are reasonable and enforceable and sufficient to protect plaintiff's business interest. See *Reliable Fire*, 2011 IL 111871, ¶ 43 ("[W]hether a legitimate business interest exists is based on the totality of the facts and circumstances of the individual case. Factors to be considered in this analysis include, but are not limited to, the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions. No factor carries any more weight than any other, but rather its importance will depend on the specific facts and circumstances of the individual case."). In this case, the most important factor is the limited nature of the type of restrictions set forth in the Agreement. The restrictive covenants (1) are no greater than are required to protect plaintiff's legitimate business interest, (2) do not

impose an undue hardship on defendant, and (3) are not injurious to the public. *Reliable Fire*, 2011 IL 111871, ¶ 17.

¶ 24 Whether plaintiff is able to sufficiently carry its burden of proving entitlement to injunctive relief is not before us in this appeal. Our decision here is limited only to the validity of the restrictive terms set forth in the Agreement. Accordingly, we reverse the trial court's determination that the restrictive covenants were not enforceable on the basis that the Agreement constituted a contract of adhesion, and we remand for further proceedings.

¶ 25                                III. CONCLUSION

¶ 26 For the foregoing reasons, we reverse the trial court's judgment dismissing plaintiff's complaint with prejudice and remand for further proceedings.

¶ 27 Reversed and remanded.