2015 IL App (1st) 133049

No. 1-13-3049

Fifth Division
January 30, 2015

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| DANIEL KOVERA and JENNIFER KOVERA, | ) ) ) | Appeal from the Circuit Court |
| Plaintiffs-Appellants, | ) ) | of Cook County. |
| v. | ) ) | No. 08 L 66013 |
| ENVIRITE OF ILLINOIS, INC., and CLIFFORD RUSE, | ) ) ) | The Honorable Robert J. Clifford, Judge Presiding. |
| Defendants-Appellees. | ) ) ) | |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Palmer and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1        On December 26, 2007, defendant Clifford Ruse was driving a tractor trailer (the truck)

on an Indiana highway in his capacity as an employee of defendant Envirite of Illinois, Inc.

(Envirite), when he was struck by a sport utility vehicle (SUV) that had lost control while

driving over a patch of black ice. Ruse's truck, in turn, swerved to the left and struck the

highway's median wall. The container the trailer had been carrying became detached from

the trailer and struck the vehicle of plaintiff Daniel Kovera, causing injury. Plaintiffs filed

suit against Ruse and Envirite, claiming that Ruse was negligent in operating the truck. After

a jury trial, the jury rendered a verdict in favor of defendants. Plaintiffs appeal, and we affirm.

¶ 2                                           BACKGROUND

¶ 3        The sequence of events leading to the instant lawsuit is not materially in dispute. Before dawn in the early morning of December 26, 2007, Ruse left the Envirite yard in Harvey, Illinois, driving a tractor trailer loaded with mill dust that he was transporting to Newton County, Indiana. He drove eastbound on I-80/94, driving in the second lane from the right on the four-lane highway at approximately 55 miles per hour. At the Kennedy Avenue interchange in Hammond, Indiana, Orlando Lopez' SUV was merging onto the highway via the two-lane entrance ramp when it slid on a patch of "black ice," a thin, transparent coating of ice on the highway. The SUV traveled across the eastbound lanes of the highway and made contact with Ruse's truck, and the truck swerved to the left and collided with the highway's median wall. The container of mill dust detached, landing on the westbound side of the highway. When the container landed, it damaged several vehicles and injured several individuals, including plaintiff Daniel Kovera, who was traveling westbound on the highway from his home in Griffith, Indiana, on his way to work in Lemont, Illinois.

¶ 4                                    I. Pretrial Proceedings

¶ 5        On March 6, 2008, plaintiffs filed a 12-count complaint in the circuit court of Cook County against defendants,[1] alleging, *inter alia*, claims of negligence in Ruse's driving and in securement of the load of mill dust, willful and wanton conduct, and *res ipsa loquitur*. On December 12, 2008, defendants filed a third-party complaint against Orlando Lopez, claiming that if they were found liable, they would be entitled to contribution from Lopez

---

[1] Ryder Truck Rental, the owner of the truck, was initially named as a defendant but was voluntarily dismissed on March 20, 2012.

pursuant to the Illinois Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 2008)). On April 24, 2009, Lopez filed a motion to dismiss for lack of personal jurisdiction, which was denied on May 11, 2010.

¶ 6 On May 7, 2009, plaintiffs filed an amended complaint, adding Lopez as a defendant. On November 24, 2009, defendants filed an answer and affirmative defenses to the amended complaint. Defendants included as an affirmative defense the claim that Lopez' negligence was the sole and proximate cause of plaintiffs' damages. The affirmative defense stated that "[u]nder Indiana law, which this Court should follow[] in this case," any award should be reduced by the percentage of fault attributable to Lopez. On November 2, 2009, defendants filed a motion to dismiss the counts based on *res ipsa loquitur*, citing Illinois law.

¶ 7 On August 10, 2010, plaintiffs filed a second amended complaint. On January 11, 2011, Lopez filed a cross-claim for contribution against defendants. On January 21, 2011, defendants filed an answer and affirmative defenses to plaintiffs' second amended complaint. Again, defendants included as an affirmative defense the claim that Lopez' negligence was the sole and proximate cause of plaintiffs' damages and that "[u]nder Indiana law, which this Court should be following in this case due to the accident occurring in Indiana," any award should be reduced by the percentage of fault attributable to Lopez.

¶ 8 On May 13, 2011, plaintiffs filed a motion for a finding that a proposed settlement between plaintiffs and Lopez in the amount of $250,000 was made in good faith. On May 20, 2011, the court entered an order finding the proposed settlement to be fair and reasonable and made in good faith. The order discharged Lopez from all liability for contribution and dismissed the complaint by plaintiffs as to Lopez with prejudice. However, the order also expressly stated that "nothing in this Order shall affect the rights of remaining Defendants to

assert [the] application of Indiana law to this case, in particular the naming of the settling party ORLANDO LOPEZ as a non-party herein, over Plaintiffs' objection."

¶ 9        The issue of whether Illinois or Indiana law applied was ultimately not decided until the beginning of trial.

¶ 10        On December 11, 2012, defendants filed their preliminary Rule 213(f)(3) disclosures. Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007). Defendants identified Daniel Fittanto as an expert, stating that "Mr. Fittanto is a professional engineer. *** Mr. Fittanto has over nineteen (19) years of professional experience in the investigation, analysis, and reconstruction of vehicle accidents involving heavy trucks, passenger cars, motorcycles, bicycles, off-highway equipment, and pedestrians. Mr. Fittanto has specialized training and experience in the analysis of commercial motor vehicle (CMV) incidents." Defendants further stated that "Mr. Fittanto's education, training, and experience include technical accident investigation and reconstruction, vehicle dynamics, heavy duty truck dynamics and systems, commercial vehicle cargo securement, heavy truck brake inspections, 3D computer-aided-drafting (CAD) software, 3-D vehicle dynamics and collision simulation programs, truck electronic control module (ECM) and automobile event data recorder (EDR) data extraction and analysis, full-scale testing involving cars and heavy trucks, and photogrammetry. His research and publications include full-scale crash tests between tractor-trailers and cars, calculating speeds for vehicles in yaw, heavy truck rollover, truck brake hearing, and the application of vehicle dynamics computer simulations to car and truck handling analyses."

¶ 11        Defendants stated that Fittanto "is expected to render opinions and conclusions as to his reconstruction of the subject accident, the regulations and requirements concerning cargo securement, his inspection of the subject chassis trailer and roll-off container being hauled by

the Defendants on December 26, 2007, the straps and mechanisms used to secure the container to the chassis, the cause of the container's separation from the chassis, and other causation issues." Finally, defendants stated that one of Fittanto's opinions was that "[a]s a combined result of the collision [with Lopez' vehicle] and Mr. Ruse's emergency maneuvers, the Defendants' tractor-trailer impacted the median wall. The impact with the median wall caused the container and chassis to roll, and as a result of the forces sustained during this impact and rollover event, the container became detached from the chassis." Plaintiffs chose not to depose Fittanto, twice canceling his scheduled deposition, so defendants took Fittanto's deposition without plaintiffs' counsel present on March 16, 2013.

¶ 12                                          II. Trial

¶ 13        Trial commenced on March 19, 2013. We relate here only the proceedings relevant to the issues in the instant case, namely, the alleged negligence of Ruse in driving the Envirite truck.

¶ 14        Prior to beginning trial, the court ruled on the choice of law issue. The court noted that there were two areas in which Indiana law differed substantively from Illinois law. The first was the question of whether Lopez, a settling defendant, would be named on the verdict form. The second was the question of what evidence would be presented concerning medical bills. The court noted that there was a presumption that the law of Indiana would apply, since it was the location where the injury occurred, but that the presumption could be overcome if Illinois had a more significant relationship to the case. However, it found that "considering all the policies, interests of Indiana and Illinois and in this particular field of the tort law in relation to the [R]estatement [S]econd, I cannot conclude that Illinois' relationship to this

case is so pivotal as to overcome the presumption that Indiana as a state where the injury occurred, is the state with the most significant relationship, [so] Indiana law will apply."

¶ 15    The next day, prior to opening statements, the court considered the issue of Lopez and what information the jury would be provided about his settlement. The court determined that Lopez would not be named on the verdict form. However, the court found that the fact that Lopez had settled with plaintiffs could be mentioned, but not the amount of the settlement.

¶ 16    During plaintiffs' case in chief, Ryan Moore testified that he was a tow truck operator on December 26, 2007, and had been called to an accident in which a pickup truck had lost control on I-80/94 near Kennedy Avenue at approximately 5 a.m. He stopped the tow truck, with amber emergency lights flashing, on the right shoulder of the highway; the highway, at that point, had four travel lanes and two merge lanes, and he was on the right shoulder of the merge lanes. He stepped out of the tow truck and noticed that the ground was slippery. However, the travel portions of the highway that he had driven had been dry.

¶ 17    Moore was preparing to load the pickup truck onto the tow truck when he heard the screeching of tires. He looked westbound, toward the eastbound traffic heading in his direction, but could only observe headlights since it was dark outside. He observed "headlights going different directions, people swerving, swerving around, slamming on their brakes." Later, he discovered that a gold or silver SUV had made contact with a "semi truck" as they were traveling eastbound. He observed the semi truck heading left, toward the center divider of the highway, and also observed the SUV rolling over and moving slightly to the right; the SUV eventually came to rest on its roof. The semi truck continued to move along the center divider and the trailer it was pulling broke free and flipped. Moore testified that "[w]hen the semi made contact with the wall, all 18–what I believe to be was a full 18-

wheeler, all the tires came off the ground. It was completely on the wall with the wheels completely off of the ground."

¶ 18    Anita Kerezman testified on behalf of plaintiffs as an expert in truck driving and truck driver training. Kerezman testified that if a truck driver was "bump[ed]" by a vehicle merging into the tractor trailer, the proper response would be to "brake and maintain the course, straight ahead" and that "you don't want to oversteer and you don't want to over brake because of what can happen to the truck," namely, a loss of control. Kerezman further testified on cross-examination that "when a truck driver is struck and there is separation, immediate separation, by another vehicle, which in this case the vehicle immediately separated and started rolling over out of the path of the truck, then yes[, the truck should continue to maintain the course and move forward]. If you try to maneuver and do other things, you cause a greater hazard and it has a higher–it has a higher possibility of something greater happening." Kerezman admitted that she had not visited the scene of the accident, and also agreed that the time between Lopez' SUV making contact with the truck and the truck colliding with the center divider was probably 3 to 3.5 seconds.

¶ 19    On cross-examination, Kerezman admitted that a state trooper arrived on the scene of the accident within approximately 10 minutes and that the trooper's report made note of the environmental conditions of the area. Kerezman testified that the report indicated that the surface conditions were dry and that all of the boxes under " 'environmental contributing circumstances' " in the report were checked " 'None.' " Kerezman further testified that the report stated that the weather conditions were clear, that the light conditions were dark but lighted, and that the road character was straight and level. Kerezman testified that she

7

considered the report of the state trooper in rendering her opinions. On redirect, Kerezman testified that the report indicated snow and ice in the far right lane.

¶ 20    Michael McDonald testified that he was driving one of the vehicles hit by the tractor trailer's container. McDonald testified that he had been traveling westbound on I-80/94 when the container came over the center divider and hit his vehicle. After the accident, McDonald exited his vehicle and tried to assist with other vehicles that had been hit on the westbound side of the roadway; he characterized the road as "spotty" and "slick in spots."

¶ 21    Ruse testified that an hour before sunrise on December 26, 2007, he left the Envirite yard in Harvey, Illinois, with a 65,000-pound tractor trailer loaded with mill dust that he was transporting to Newton County, Indiana. He drove eastbound on I-80/94, riding in the second lane from the right; at that point, the highway was four lanes wide in each direction and traffic was very light. Ruse was driving at 55 to 65 miles per hour, and his truck was in "ten-high gear," which was "the highest, fastest speed on the truck." Ruse admitted that the roads were "conducive" to black ice under the weather conditions, but testified that he had not encountered any black ice on his drive and "[t]he roads were dry. They were not wet."

¶ 22    Ruse approached the Kennedy Avenue interchange, still traveling in the second lane and still maintaining his speed; the entrance ramp was two lanes wide, so there were the two merge lanes and the far right lane of traffic to Ruse's right. Ruse did not observe Moore's tow truck with its flashing lights on the right shoulder of the entrance ramp. Ruse observed Lopez in his SUV and then observed the SUV hit a "slippery spot" and begin fishtailing. The SUV "pretty much came right at" Ruse's truck and made "extremely hard" impact with the front of the truck. Ruse slammed on the brakes, honked his horn, and turned his steering wheel left "to 8 or 9 o'clock." Ruse testified that "[a]s I steered to the left, Mr. Lopez came

into my lane and flipped, I don't know, three or four or five times or something like that, in my lane directly in front of me." As he observed the SUV flipping, Ruse "tried to pull to the left so I wouldn't strike him again." Ruse's truck traveled across the third and fourth lanes of the highway and collided with the center median wall.

¶ 23    During her testimony, Jennifer Kovera was asked: "[I]sn't it true that you and your husband, the plaintiffs in this case, accepted money in settlement from Mr. Lopez [for] claims that you two brought against Mr. Lopez?" She responded that they received "a small disbursement of a settlement." After her testimony, the jury was provided the opportunity to submit questions,[2] and one of the questions submitted was: "How much was the settlement from Mr. Lopez's case?" The question was not asked by the court. Similarly, during Daniel Kovera's testimony, he was asked: "In this lawsuit, you and your wife and your attorneys sued Mr. Lopez and received settlement monies from him in this case; correct?" He responded that "we received a small settlement to pay some bills."

¶ 24    After plaintiffs rested, the trial court granted defendants' motion for a directed finding as to plaintiffs' willful and wanton claims, but denied the motion for a directed finding as to claims of Ruse's negligent driving and reserved its ruling on the issue of negligence in the securement of the load. The court also dismissed all separate claims against Envirite other than the claim for liability on the basis of *respondeat superior*.

¶ 25    During the defense's case in chief, Gary Cooper testified as an expert in accident reconstruction as to the cause of the collision between Ruse's truck and Lopez' SUV. Cooper testified that from the point at which Lopez' SUV hit the patch of black ice to the point at which Ruse's tractor hit the center median was approximately 285 feet. Cooper further

---

[2] The jury was provided the opportunity to submit questions after every witness' testimony.

testified that at the time of the collision between Ruse's truck and Lopez' SUV, Ruse was traveling at approximately 55 miles per hour, meaning that the 285 feet would be covered in 3.53 seconds. Cooper opined that the cause of the collision was Lopez' SUV entering the truck's travel path; Ruse's truck was heading eastbound at the time of the collision, while Lopez' SUV was traveling "[a]cross the road or more or less northbound." The SUV made contact with the truck's right front tire and bumper area and eventually came to rest "[p]rimarily in the leftmost lane, but the rear would be in the second lane from the left."

¶ 26　　Prior to the testimony of Daniel Fittanto, an engineer and a vehicle dynamics expert on behalf of defendants, plaintiffs' counsel asked the court to bar Fittanto from testifying as to opinions relying upon force calculations, arguing that the defense never disclosed that Fittanto made any calculations as to the forces at play in the collision until his deposition a week before trial. Plaintiffs' counsel admitted that Fittanto was never deposed by plaintiffs, but argued that the basis for his opinions should have been disclosed in defendant's Rule 213(f)(3) disclosures. The court denied plaintiffs' motion. The court noted that "I did not enunciate the six Sullivan factors, but I did consider them in my ruling."

¶ 27　　Fittanto testified that, normally, the lateral force of the tractor's front axle was approximately 6,000 pounds. In the case of the collision, the impact yielded a conservative estimate of 74,000 pounds of force. Fittanto explained that, "[s]imply stated, the impact of this SUV will knock [the tractor's] steer axle to the left and redirect the tractor and trailer to the left." He clarified that "we are not saying that the SUV hits the 55,000 pound tractor-trailer load and all and moved the entire load, shifts everything. What it does, it redirects the steer tires. And where the steer tires go, the vehicle follows."

¶ 28    The trial court also took judicial notice of a certified weather report showing "[t]hat the day before and up until the time of the accident, [(1)] that the temperature was below freezing, [(2)] that it was clear, [(3)] that there had been no precipitation, and [(4)] [that] there was a humidity level of 85 to 97 percent."

¶ 29    The defense then rested and, after no rebuttal from plaintiffs, renewed the motion for a directed finding. After argument, the trial court granted a directed finding in defendants' favor on the issue of load securement.

¶ 30    When discussing jury instructions, one of plaintiffs' tendered instructions was based on Indiana Model Civil Jury Instruction 937 and provided:

"When the events in this case happened, Indiana Code section 9-21-5-1 and section 9-21-5-4 provided as follows:

IC 9-21-5-1: A person may not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, having regard to the actual and potential hazards then existing. Speed shall be restricted as necessary to avoid colliding with a person, vehicle, or other conveyance on, near, or entering a highway in compliance with legal requirements and with the duty of all persons to use due care.

IC 9-21-5-4: The driver of each vehicle shall, consistent with section 1 of this chapter, drive at an appropriate reduced speed as follows: (1) When approaching and crossing an intersection or railway; (5) When special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions.

When the events in this case happened, section 392.14 of the Federal Motor Carrier

Safety Regulations and provided as follows:

> § 392.14 Extreme caution in the operation of a commercial motor vehicle
> shall be exercised when hazardous conditions, such as those caused by snow, ice,
> sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed
> shall be reduced when such conditions exist.

If you decide from the greater weight of the evidence that a person violated Indiana

Code sections IC 9-21-5-1 and section IC 9-21-5-4 or section 392.14 of the Federal

Motor Carrier Safety Regulations, and that the violation was not excused, then you

must decide that person was negligent."

The trial court, after considering the pattern instruction and the comments to it, stated that

"[a]fter struggling over this mightily, I might add, this instruction is going to be given.

However, it is going to be given from the point of view that a violation of this is the–this will

not appear as the words prima facie evidence, but it will be worded that it is to be taken into

consideration as evidence of [negligence]."

¶ 31    The instruction that the court ultimately gave provided:

> "When the events in this case happened, Indiana code, Section IC 9-21-5-1 and
> Section 9-21-5-4 provide as follows:
>
> Section 9-21-5-1, 'A person may not drive a vehicle on a highway at a speed
> greater than is reasonable and prudent under the conditions, having regard to the
> actual and potential hazards then existing; speed should be restricted as necessary to
> avoid colliding with another person, vehicle or other conveyance on, near or entering

12

a highway in compliance with legal requirements and the duty of all persons to use due care.[']

IC 9-21-5-4, 'The driver of each vehicle shall, consistent with Section 1 of this chapter, drive at an appropriate, reduced speed as follows: When special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.[']

When the events of this case happen[ed], section 392.14 of the Federal Motor Carrier Safety Regulations provided as follows: 'Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions such as those caused by snow, ice, sleet, fog, mist, rain, dust or smoke adversely [a]ffect the visibility or traction, speed shall be reduced when such conditions exist.[']

If you decide from the greater weight of the evidence that a person violated Indiana code Section IC 9-21-5-1 or Section IC 9-21-5-4 or Section 392.14 of the Federal Motor Carrier Safety Regulations and that violation was not excused, then you may consider that together with all the other facts and circumstances in determining whether and to what extent, if any, that person was negligent."

The court further instructed:

"A person may be excused from failing to comply with the statute if he proves by the greater weight of the evidence that compliance was impossible, that noncompliance was excusable because of circumstances one, beyond a person's control and two, not the result of the person's negligence or the statute provided a specific excuse."

¶ 32     The court also gave the following instruction concerning "sudden emergency":

13

"Defendants claim they were not at fault because Clifford Ruse acted with reasonable care in an emergency situation.

Defendants were not at fault if they prove the following by the greater weight of the evidence: Once, Clifford Ruse was faced with a sudden emergency; second, he did not cause the emergency; third, he did not have enough time to consider his options, and four, he acted as a reasonably careful person would act when facing a similar emergency, even if a different course of action might later seem to have been a better choice."

¶ 33    On March 28, 2013, the jury returned a verdict in favor of defendants and the trial court entered judgment on the jury's verdict the same day.

¶ 34                    III. Posttrial Proceedings

¶ 35    On June 12, 2013, plaintiffs filed a posttrial motion for a new trial, arguing that the jury verdict was against the manifest weight of the evidence and that the trial court's errors prejudiced plaintiffs and deprived them of a fair trial. The trial court denied plaintiffs' posttrial motion for a new trial on August 27, 2013, and this appeal follows.

¶ 36                         ANALYSIS

¶ 37    On appeal, plaintiffs raise a number of issues. First, they argue that they are entitled to a new trial because the jury verdict was against the manifest weight of the evidence. Additionally, they argue that the trial court made a number of errors that deprived plaintiffs of a fair trial, including (1) determining at the beginning of trial that Indiana law would apply, (2) admitting evidence that plaintiffs had settled with Lopez, (3) permitting Fittanto to testify to previously undisclosed opinions, and (4) failing to correctly instruct the jury on negligence *per se* under Indiana law. We consider each argument in turn.

¶ 38                                I. Jury Verdict

¶ 39        First, plaintiffs argue that they are entitled to a new trial because the jury's verdict was against the manifest weight of the evidence. " '[O]n a motion for a new trial a court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence.' " *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992) (quoting *Mizowek v. De Franco*, 64 Ill. 2d 303, 310 (1976)). " 'A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence.' " *Maple*, 151 Ill. 2d at 454 (quoting *Villa v. Crown Cork & Seal Co.*, 202 Ill. App. 3d 1082, 1089 (1990)).

¶ 40        Plaintiffs claim that the jury's conclusion that defendants were not at fault was against the manifest weight of the evidence because, given the evidence presented at trial, the only conclusion could have been that Ruse was driving negligently. Under Indiana law, "[t]o prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007) (citing *Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999)). "All operators of motor vehicles have a general duty to use ordinary care to avoid injuries to other motorists." *Wilkerson v. Harvey*, 814 N.E.2d 686, 693 (Ind. Ct. App. 2004) (citing *Allied Fidelity Insurance Co. v. Lamb*, 361 N.E.2d 174, 180 (Ind. Ct. App. 1977)). Additionally, "a motorist is charged with the duty of exercising ordinary care to observe dangers and obstructions and is chargeable with notice of obstructions that a person of

ordinary prudence would reasonably be expected to observe." *Wilkerson*, 814 N.E.2d at 693 (citing *Smith v. Beaty*, 639 N.E.2d 1029, 1033 (Ind. Ct. App. 1994)).

¶ 41     In the case at bar, plaintiffs claim that Ruse was driving negligently in two respects. First, they claim that he was driving his truck at a speed that was greater than was reasonable under the road conditions. Second, they claim that Ruse was negligent for slamming on his brakes and turning the wheel after the impact with Lopez' SUV. We do not find plaintiffs' arguments persuasive and cannot find that the jury's conclusion that Ruse was not at fault was against the manifest weight of the evidence.

¶ 42     Regarding the issue of Ruse's speed, plaintiffs point to Indiana statutes requiring drivers to drive at a reduced speed when operating in hazardous conditions. For instance, Indiana Code section 9-21-5-1 provides:

> "Sec. 1. A person may not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, having regard to the actual and potential hazards then existing. Speed shall be restricted as necessary to avoid colliding with a person, vehicle, or other conveyance on, near, or entering a highway in compliance with legal requirements and with the duty of all persons to use due care." Ind. Code § 9-21-5-1 (2007).

Similarly, Indiana Code section 9-21-5-4 provides:

> "Sec. 4. The driver of each vehicle shall, consistent with section 1 of this chapter, drive at an appropriate reduced speed as follows:
>
> * * *
>
> (5) When special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions." Ind. Code § 9-21-5-4 (2007).

16

Plaintiffs claim that Ruse should have reduced his speed because he knew of the potential for black ice, he was approaching an entrance ramp, and there was a prior accident on the shoulder. "It has long been [the] rule" under Indiana law "that negligence, with respect to speed and the visibility of objects on the road ahead, is a question of fact for the jury to consider in light of all of the circumstances." *Board of Commissioners of Delaware County v. Briggs*, 337 N.E.2d 852, 875 (Ind. Ct. App. 1975); *St. John Town Board v. Lambert*, 725 N.E.2d 507, 517 (Ind. Ct. App. 2000) (finding that there was a genuine issue of material fact as to whether a driver operated his vehicle too fast for weather and road conditions). See also *Thomas v. Northington*, 134 Ill. App. 3d 141, 148 (1985) (under Illinois law, it was a question of fact for the jury "as to whether defendant was negligent in following plaintiffs' car too closely, failing to keep a proper lookout and proceeding at a speed too fast for conditions"). In the case at bar, as defendants note, the jury was also presented with evidence that the weather was clear and dry, that Ruse was traveling in the second from right lane, and that there were three lanes (the far right lane and the two merge lanes) between him and the accident on the shoulder. The jury was entitled to conclude that given this evidence, Ruse was driving reasonably under the conditions and was not driving negligently by failing to reduce his speed. See *Maple*, 151 Ill. 2d at 452 ("Unquestionably, it is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony.").

¶ 43    The same analysis applies when considering plaintiffs' other claims that Ruse was negligent for slamming on his brakes and turning his steering wheel to the left. While Kerezman, plaintiffs' expert, testified that Ruse should have continued traveling forward and should not have turned his wheel, both Ruse and Cooper, defendants' expert, testified that

Lopez' SUV continued to roll into the path of Ruse's truck and came to rest in the leftmost lanes of the highway. The jury could certainly have concluded that Ruse's actions were reasonable in order to prevent further impact with the SUV. Accordingly, we cannot find that the jury's verdict was against the manifest weight of the evidence.

¶ 44                                                II. Fair Trial

¶ 45        Plaintiffs also argue that they were deprived of a fair trial due to the trial court's errors, including (1) determining at the beginning of trial that Indiana law would apply, (2) admitting evidence that plaintiffs had settled with Lopez, (3) permitting Fittanto to testify to previously undisclosed opinions, and (4) failing to correctly instruct the jury on negligence *per se* under Indiana law.

¶ 46                                    A. Application of Indiana Law

¶ 47        Plaintiffs claim that the trial court erred in determining at the beginning of trial that Indiana, not Illinois, law would apply. Plaintiffs do not argue that the choice of Indiana law was incorrect under a choice-of-law analysis. However, plaintiffs argue that the trial court should not have engaged in a choice-of-law analysis and should have instead applied Illinois law because defendants waived any argument that Indiana law applied and the trial court erred in failing to find waiver. We review the issue of whether the trial court erred in choosing not to find the issue waived for an abuse of discretion. See *Metropolitan Water Reclamation District of Greater Chicago v. Terra Foundation for American Art*, 2014 IL App (1st) 130307, ¶ 52 (applying abuse-of-discretion review to the trial court's determination that the plaintiff had forfeited its argument by raising it for the first time after trial was completed); *Hanley v. City of Chicago*, 343 Ill. App. 3d 49, 54 (2003) (applying abuse-of-discretion review to the trial court's decision to allow the defendant to raise an affirmative

defense for the first time in a motion for summary judgment). "An abuse of discretion occurs where a trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view." *In re Estate of Klehm*, 363 Ill. App. 3d 373, 380 (2006) (citing *Agnew v. Shaw*, 355 Ill. App. 3d 981, 990 (2005)).

¶ 48 In the case at bar, the trial court did not rule on the issue of whether Indiana or Illinois law would apply until the beginning of trial. The trial court noted that it had not been asked to rule on the issue until that point by either party and that it would have done so earlier if requested. In order to determine whether the court abused its discretion in not finding the issue waived, it is necessary to consider the case's procedural history. On March 6, 2008, plaintiffs filed their initial complaint. On December 12, 2008, defendants filed a third-party complaint against Lopez, claiming that if they were found liable, they would be entitled to contribution from Lopez pursuant to the Illinois Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 2008)). Thus, as of the time of the filing of the third-party complaint, defendants cited Illinois law.

¶ 49 On May 7, 2009, plaintiffs filed an amended complaint, adding Lopez as a defendant. On November 24, 2009, defendants filed an answer and affirmative defenses to the amended complaint. Defendants included as an affirmative defense the claim that Lopez' negligence was the sole and proximate cause of plaintiffs' damages, stating that "[u]nder Indiana law, which this Court should follow[] in this case," any award should be reduced by the percentage of fault attributable to Lopez. Thus, as of the time of the filing of the answer and affirmative defenses to the amended complaint, defendants had raised the issue of the applicability of Indiana law. However, in a motion to dismiss filed on November 2, 2009, defendants argued that the counts based on *res ipsa loquitur* should be dismissed and cited

only Illinois law. In their January 21, 2011, answer and affirmative defenses to plaintiffs' second amended complaint, defendants again included as an affirmative defense the claim that Lopez' negligence was the sole and proximate cause of plaintiffs' damages and that "[u]nder Indiana law, which this Court should be following in this case due to the accident occurring in Indiana," any award should be reduced by the percentage of fault attributable to Lopez.

¶ 50    On May 13, 2011, plaintiffs filed a motion for a finding that a proposed settlement between plaintiffs and Lopez in the amount of $250,000 was in good faith. On May 20, 2011, the court entered an order finding the proposed settlement to be fair and reasonable and made in good faith. The order discharged Lopez from all liability for contribution and dismissed the complaint by plaintiffs as to Lopez with prejudice. However, the order also expressly stated that "nothing in this Order shall affect the rights of remaining Defendants to assert application of Indiana law to this case, in particular the naming of the settling party ORLANDO LOPEZ as a non-party herein, over Plaintiffs' objection."

¶ 51    Reciting this procedural history, it is clear that the prospect of Indiana law was raised in defendants' pleadings as early as November 2009 and continued to be raised through May 2011. However, it is equally clear that neither party ever expressly asked the trial court to rule on the issue before the eve of trial, when the parties discussed whether Lopez would appear on the verdict form.

¶ 52    Plaintiffs claim that defendants' early reliance on Illinois law, especially in their motion to dismiss the *res ipsa loquitur* counts, as well as their failure to obtain a ruling on the choice-of-law issue, should have resulted in the waiver of their argument that Indiana law should apply. We do not find this argument persuasive. First, the two Illinois cases plaintiffs

cite involve situations in which the parties did not assert another state's law applied until the case was on appeal, and the other two cases are federal cases not binding on this court. See *Zabaneh Franchises, LLC v. Walker*, 2012 IL App (4th) 110215, ¶ 14; *Yates v. Doctor's Associates, Inc.*, 193 Ill. App. 3d 431, 438-39 (1990); *Wachovia Securities, LLC v. Banco Panamericano, Inc.*, 674 F.3d 743 (7th Cir. 2012); *Jentz v. ConAgra Foods, Inc.*, Nos. 10-CV-0474-MJR, 10-CV-0952-MJR, 11-CV-0391-MJR, 2012 WL 3230447 (S.D. Ill. Aug. 6, 2012). Here, by contrast, the issue was raised before the trial court and, while not necessarily fleshed out, had been at least mentioned a number of times throughout the pretrial proceedings. Additionally, plaintiffs' argument that defendants "reverted back to arguing the application of Illinois law" in their motion to dismiss the counts based on *res ipsa loquitur* does not support their waiver argument. "In conflict of laws situations, the procedural law of the forum State is applied and the substantive law of the other State is applied." *Boersma v. Amoco Oil Co.*, 276 Ill. App. 3d 638, 645 (1995). In the case of the doctrine of *res ipsa loquitur*, "[w]hen a State's *res ipsa loquitur* doctrine is only an application of the rules of circumstantial evidence, the local law of the forum will be applied to determine the circumstances under which the doctrine may be invoked." *Boersma*, 276 Ill. App. 3d at 645 (citing Restatement (Second) of Conflict of Laws § 135 (1971)). In the case of Indiana's law, "Indiana's *res ipsa loquitur* doctrine is a rule of evidence [citation], has no substantive effect and merely regulates the conduct of the trial ***." *Boersma*, 276 Ill. App. 3d at 646 (citing *Bituminous Fire & Marine Insurance Co. v. Culligan Fyrprotexion, Inc.*, 437 N.E.2d 1360, 1365 (Ind. Ct. App. 1982)). Thus, Illinois law would have applied and defendants had no reason to cite to Indiana law in arguing the dismissal of those counts of the complaint.

¶ 53    Our supreme court has stated that "[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007). Defendants argue that, accordingly, they had no reason to raise the choice-of-law issue until there was an area in which the difference in law would be potentially outcome-determinative. While we agree with the trial court that it would have been better for the parties to seek a resolution at an earlier point in the proceedings, we cannot find that the trial court abused its discretion in finding no waiver and considering the choice-of-law issue.

¶ 54                              B. Settlement With Lopez

¶ 55    We next consider whether the trial court properly admitted evidence of plaintiffs' settlement with Lopez. The decision to admit or exclude evidence rests within the sound discretion of the trial court and that decision will not be disturbed absent an abuse of discretion. *Snelson v. Kamm*, 204 Ill. 2d 1, 24 (2003). As noted, "[a]n abuse of discretion occurs where a trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view." *Klehm*, 363 Ill. App. 3d at 380 (citing *Agnew*, 355 Ill. App. 3d at 990). Moreover, a party is not entitled to reversal based upon the trial court's evidentiary rulings unless the error substantially prejudiced the aggrieved party and affected the outcome of the case. *Bosco v. Janowitz*, 388 Ill. App. 3d 450, 462-63 (2009). The party seeking reversal bears the burden of establishing such prejudice. *Bosco*, 388 Ill. App. 3d at 463.

¶ 56    In the case at bar, the trial court permitted testimony that Lopez had settled with plaintiffs but barred evidence as to the amount of the settlement. Defendants argue that this testimony was properly admitted under Indiana's collateral source statute, while plaintiffs argue that a

settlement payment by a tortfeasor is not considered a collateral source. However, we have no need to decide this question because, regardless of whether this testimony should have been admitted, we cannot find that plaintiffs were prejudiced by its admission given that the jury never reached the issue of damages and plaintiffs' testimony informed the jury that the settlement was minimal. Plaintiffs argue that they were prejudiced because "[t]he jury heard evidence of the settlement and no doubt wondered whether Daniel and Jennifer had already been paid for their damages and whether they had settled with Lopez because they believed he was the true culpable party." However, plaintiffs never disputed the fact that Lopez bore some fault; indeed, it would be hard for them not to acknowledge that fact, given that the entire course of events began when Lopez' SUV collided with Ruse's truck, nor did they need to dispute it, given that defendants were proceeding on a theory that Lopez was the sole proximate cause of plaintiffs' injuries. For instance, during opening statements, plaintiffs' counsel stated that "[t]here's going to be a claim in the case, you will hear evidence or argument, that Mr. Lopez was at fault. We don't deny that he was. You may even hear evidence that Mr. Lopez settled parts of his case. No argument that he did. It's a several thousand-pound car." Leaving aside the reference to the settlement (which we agree with plaintiffs was an attempt to "front" the settlement in light of the trial court's ruling), plaintiffs expressly stated to the jury that they would not be denying that Lopez bore some fault. Similarly, during closing arguments, plaintiffs' counsel addressed the defense theory that Lopez was the sole proximate cause of the accident:

> "[I]t was all Orlando Lopez's fault. That's what they are telling you. It's all his fault.
> You should find in your verdict that he was solely responsible.

23

How can you do that with violations of every tenant [*sic*] of what a truck driver should do; no attempt to slow down, no attempt to adjust for black ice. It's the other guy's fault.

I told you in the beginning, he is a passenger vehicle, he hit ice. He hit ice like the truck that was right in front of him, the pick up truck. Getting on an entrance ramp at 5:30 in the morning on Kennedy Avenue. He ignored the same lights that Ruse ignored. They were right there for him. He sees them, tow truck there, and he slides out.

Are they 50/50 at fault? Maybe. Are they 60/40, is one of them 90/10? The issue is, they are going to tell you today he was the sole responsible cause for this wreck. They have to. It's a dog bite defense. It's all him.

\* \* \*

Under the law that you are going to apply in this case there can be more than one responsible cause for an injury. There were; Lopez and Ruse, no question about it."

Given that it was no secret that Lopez bore some fault in the accident, it is hard to find any prejudice by admitting evidence of the fact that Lopez had settled.

¶ 57 Furthermore, any prejudice that could have occurred was cured by plaintiffs' testimony. We note that both Daniel and Jennifer Kovera did in fact testify that the settlement amount was "small," despite the fact that the trial court barred evidence of the amount of the settlement. Both plaintiffs were asked about settling with Lopez during their testimony. Jennifer responded that they received "a small disbursement of a settlement," and Daniel responded that "we received a small settlement to pay some bills." Thus, to the extent that the jury heard anything about the settlement itself, plaintiffs minimized its impact by indicating

24

that the settlement was minimal. Accordingly, we cannot find that plaintiffs were prejudiced by the trial court's admission of the fact of their settlement with Lopez, and absent prejudice, there is no reversible error.

¶ 58                                    C. Admission of Fittanto's Testimony

¶ 59        Plaintiffs next argue that the trial court erred in permitting Fittanto to testify to the force calculations he performed and his conclusions arising from those calculations, claiming that they were previously undisclosed opinions. The admission of evidence pursuant to Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007) is within the sound discretion of the trial court and the court's ruling will not be disturbed absent an abuse of discretion. *Sullivan v. Edward Hospital,* 209 Ill. 2d 100, 109 (2004). Rule 213 disclosure requirements are mandatory and subject to strict compliance by the parties. *Sullivan,* 209 Ill. 2d at 109. However, the failure to comply with Rule 213 does not automatically require the exclusion of the noncomplying party's witnesses or testimony. Our supreme court has held that in determining whether the exclusion of a witness or testimony is a proper sanction for nondisclosure, the court "must consider" the following factors: (1) the surprise to the adverse party; (2) the prejudicial effect of the testimony; (3) the nature of the testimony; (4) the diligence of the adverse party; (5) the timely objection to the testimony; and (6) the good faith of the party calling the witness. *Sullivan,* 209 Ill. 2d at 110. In the case at bar, we cannot find that the trial court abused its discretion in permitting Fittanto to testify about the force calculations and his opinions arising from those calculations. The trial court indicated that it utilized the *Sullivan* factors in deciding the admissibility of those calculations. Plaintiffs failed to show the trial court, or this court, how the testimony concerning the calculations prejudiced them, or if they knew the calculation evidence would be admitted, what they would have done differently. They

only argue that they were prejudiced because "the opinions provided an excuse (redirection of his tractor by the impact) for Ruse's conduct in driving into the median wall." However, as noted below, defendants' disclosures expressly stated that Ruse's truck impacted the median wall "[a]s a combined result of the collision [with Lopez' vehicle] and Mr. Ruse's emergency maneuvers."

¶ 60    On December 11, 2012, defendants filed their preliminary Rule 213(f)(3) disclosures. Defendants identified Daniel Fittanto as an expert, stating that "Mr. Fittanto is a professional engineer. *** Mr. Fittanto has over nineteen (19) years of professional experience in the investigation, analysis, and reconstruction of vehicle accidents involving heavy trucks, passenger cars, motorcycles, bicycles, off-highway equipment, and pedestrians. Mr. Fittanto has specialized training and experience in the analysis of commercial motor vehicle (CMV) incidents." Defendants further stated that "Mr. Fittanto's education, training, and experience include technical accident investigation and reconstruction, vehicle dynamics, heavy duty truck dynamics and systems, commercial vehicle cargo securement, heavy truck brake inspections, 3D computer-aided-drafting (CAD) software, 3-D vehicle dynamics and collision simulation programs, truck electronic control module (ECM) and automobile event data recorder (EDR) data extraction and analysis, full-scale testing involving cars and heavy trucks, and photogrammetry. His research and publications include full-scale crash tests between tractor-trailers and cars, calculating speeds for vehicles in yaw, heavy truck rollover, truck brake hearing, and the application of vehicle dynamics computer simulations to car and truck handling analyses."

¶ 61    Defendants stated that Fittanto "is expected to render opinions and conclusions as to his reconstruction of the subject accident, the regulations and requirements concerning cargo

securement, his inspection of the subject chassis trailer and roll-off container being hauled by the Defendants on December 26, 2007, the straps and mechanisms used to secure the container to the chassis, the cause of the container's separation from the chassis, and other causation issues." Finally, defendants stated that one of Fittanto's opinions was that "[a]s a combined result of the collision [with Lopez' vehicle] and Mr. Ruse's emergency maneuvers, the Defendants' tractor-trailer impacted the median wall. The impact with the median wall caused the container and chassis to roll, and as a result of the forces sustained during this impact and rollover event, the container became detached from the chassis." Plaintiffs chose not to depose Fittanto, twice canceling his scheduled deposition, so defendants took Fittanto's deposition without plaintiffs' counsel present on March 16, 2013.

¶ 62    Plaintiffs argue that "no where [*sic*] in the disclosure was it mentioned that Fittanto had performed force calculations relating to Ruse's trucks' tires or that Fittanto had performed force calculations relating to the force of the impact between the Lopez SUV and Ruse's tractor and the redirection effect of that force on Ruse's tractor. [Citation.] Likewise, the calculations and the opinions based thereon were never disclosed."

¶ 63    We have noted that "[t]he exact words that were used in the question and answer need not be specifically set out in a written disclosure when the subject matter is adequately disclosed in written discovery." *Zickuhr v. Ericsson, Inc.*, 2011 IL App (1st) 103430, ¶ 85. Likewise, "[a] witness may elaborate on a properly disclosed opinion" as long as the testimony is encompassed by the original opinion and is not a new reason for the opinion. *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 849 (2010). In the case at bar, defendants' disclosure stated that Fittanto would opine that Ruse's truck hit the wall as a combined result of the impact and Ruse's maneuvers, with a specific reference to "the forces sustained during this impact

27

and rollover event." Thus, the disclosure indicated that some analysis as to the forces in play had been conducted. Furthermore, the qualifications set forth in the disclosure make it clear that Fittanto's experience was heavily technical and analytical, including "technical accident investigation and reconstruction" and "vehicle dynamics." Accordingly, since plaintiffs have not shown us how the disclosure of the calculations prejudiced them, we cannot find that the trial court abused its discretion in finding Fittanto's opinions to be adequately disclosed.

¶ 64                                  D. Negligence *Per Se* Jury Instruction

¶ 65          Finally, plaintiffs argue that the trial court erred in failing to instruct the jury on negligence *per se* under Indiana law. "The trial court has discretion to determine which instructions to give the jury and that determination will not be disturbed absent an abuse of that discretion." *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273 (2002). "The standard for deciding whether a trial court abused its discretion is whether, taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles." *Schultz*, 201 Ill. 2d at 273-74. However, "[a]lthough jury instructions are generally reviewed for an abuse of discretion, our standard of review is *de novo* when the question is whether the applicable law was accurately conveyed." *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163, 170 (2008) (citing *People v. Pierce*, 226 Ill. 2d 470, 475 (2007)); *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 13. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). Nevertheless, even if the reviewing court determines that the trial court gave faulty instructions to the jury, reversal is not warranted unless the error results in " 'serious prejudice' " to the appellant's right to a fair trial. *Studt*, 2011 IL 108182, ¶ 28 (quoting *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007));

28

*Schultz*, 201 Ill. 2d at 274 ("A reviewing court ordinarily will not reverse a trial court for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant.").

¶ 66        In the case at bar, plaintiffs tendered a jury instruction based on Indiana Model Civil Jury Instruction 937 which provided:

"When the events in this case happened, Indiana Code section 9-21-5-1 and section 9-21-5-4 provided as follows:

IC 9-21-5-1: A person may not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, having regard to the actual and potential hazards then existing. Speed shall be restricted as necessary to avoid colliding with a person, vehicle, or other conveyance on, near, or entering a highway in compliance with legal requirements and with the duty of all persons to use due care.

IC 9-21-5-4: The driver of each vehicle shall, consistent with section 1 of this chapter, drive at an appropriate reduced speed as follows: (1) When approaching and crossing an intersection or railway; (5) When special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions.

When the events in this case happened, section 392.14 of the Federal Motor Carrier Safety Regulations and provided as follows:

§ 392.14 Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice,

sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist.

If you decide from the greater weight of the evidence that a person violated Indiana Code sections IC 9-21-5-1 and section IC 9-21-5-4 or section 392.14 of the Federal Motor Carrier Safety Regulations, and that the violation was not excused, then you must decide that person was negligent."

The trial court, after considering the pattern instruction and the comments to it, stated that "[a]fter struggling over this mightily, I might add, this instruction is going to be given. However, it is going to be given from the point of view that a violation of this is the – this will not appear as the words prima facie evidence, but it will be worded that it is to be taken into consideration as evidence of [negligence]." The instruction the court ultimately gave replaced the last paragraph of plaintiffs' tendered instruction with the paragraph:

"If you decide from the greater weight of the evidence that a person violated Indiana code Section IC 9-21-5-1 or Section IC 9-21-5-4 or Section 392.14 of the Federal Motor Carrier Safety Regulations and that violation was not excused, then you may consider that together with all the other facts and circumstances in determining whether and to what extent, if any, that person was negligent."

Plaintiffs argue that by modifying their tendered instruction to remove the negligence *per se* aspect, the trial court did not properly instruct the jury on Indiana law. We do not find plaintiffs' argument persuasive.

¶ 67        "The violation of a duty fixed or prescribed by statute is often described as negligence *per se*" (*Kho v. Pennington*, 875 N.E.2d 208, 212 (Ind. 2007)) and the Supreme Court of Indiana has stated that "Indiana courts have a long and continuous history of recognizing

30

negligence actions for statutory violations" (*Kho*, 875 N.E.2d at 212). "[T]he unexcused violation of a statutory duty constitutes negligence *per se* 'if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation.' " *Kho*, 875 N.E.2d at 212-13 (quoting *Plesha v. Edmonds*, 717 N.E.2d 981, 986 (Ind. Ct. App. 1999)).

¶ 68    However, the comments to the pattern instruction indicate that "while a statutory violation is generally negligence per se it is sometimes merely *prima facie* evidence of negligence, and whether a statutory violation is negligent conduct may become a jury question because circumstances may excuse technical violations." Indiana Model Civil Jury Instructions 937, Comments (citing *Larkins v. Kohlmeyer*, 98 N.E.2d 896, 900 (Ind. 1951)). See also *Stepanek v. Durbin*, 640 N.E.2d 429, 431 (Ind. Ct. App. 1994) ("Numerous Indiana cases have held that violation of a motor vehicle statute creates a rebuttable presumption of negligence which may be overcome by evidence that the driver, even though violating the statute, acted as a reasonably prudent person would act under the circumstances."). In the case at bar, the trial court concluded that the instant situation was one in which a statutory violation would fall within this latter category.

¶ 69    We do not need to decide the question of whether the trial court properly concluded that this situation was one in which violation of the statute was only *prima facie* evidence of negligence, however, because even if the instruction was faulty, we find no reversible error. As noted, reversal is not warranted unless the error in instructing the jury results in " 'serious prejudice' " to the appellant's right to a fair trial. *Studt*, 2011 IL 108182, ¶ 28 (quoting

*Heastie*, 226 Ill. 2d at 543). In the case at bar, we see no serious prejudice to plaintiffs' right to a fair trial.

¶ 70    The statutes at issue in the instant case all essentially require a driver to drive at a reasonable speed under hazardous weather conditions. See Ind. Code § 9-21-5-1 (2007) ("A person may not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, having regard to the actual and potential hazards then existing."); Ind. Code § 9-21-5-4 (2007) ("The driver of each vehicle shall, consistent with section 1 of this chapter, drive at appropriate reduced speed" when special hazards exist due to weather or road conditions.). However, the reasonableness of Ruse's conduct was exactly what the jury was asked to decide in its analysis of whether Ruse was negligent. For instance, the jury was instructed: "Every motor vehicle driver must use the care an ordinarily careful person would use under the same or similar circumstances. Drivers who do not use reasonable care are negligent." The jury was also instructed: "Every driver must maintain a proper lookout to see or hear what should be seen or heard through the exercise of reasonable care. A person is negligent if he does not maintain a proper lookout." Finally, the jury was instructed: "A person is negligent if he or she does something a reasonably careful person would not do in the same situation, or fails to do something a reasonably careful person would do in the same situation," and was further instructed that "[r]easonable care means being careful and using good judgment and common sense." Thus, the jury was expressly instructed that a driver who did not use reasonable care under the circumstances was negligent. The fact that these instructions were repeated in the statute and violation of the statute could also serve as another source of negligence would not change the jury's analysis or what it was asked to determine. In other words, the statute and the jury instructions

representing the common law both stated exactly the same thing---that Ruse would be negligent if he was not operating his truck reasonably under the circumstances. Even assuming *arguendo* that the jury should have been instructed as to negligence *per se*, the modification of the instruction in the instant case cannot be reversible error.

¶ 71                                                   CONCLUSION

¶ 72        The judgment in favor of defendants is affirmed. The jury's verdict was not against the manifest weight of the evidence and plaintiffs were not deprived of a fair trial due to the trial court's errors.

¶ 73        Affirmed.