# Illinois Official Reports

## Appellate Court

---

***Great American Insurance Co. of New York v. Heneghan Wrecking & Excavating Co.*,
2015 IL App (1st) 133376**

---

| | |
|---|---|
| Appellate Court Caption | GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, as Subrogee of 600 Wabash Commercial, LLC; AMERICAN ECONOMY INSURANCE COMPANY, as Subrogee of Moonstone Foods Enterprises, LLC; SOCIETY INSURANCE, a Mutual Company, as Subrogee of Charming Food Network, Inc., d/b/a Tamarind; and FIRST NATIONAL INSURANCE COMPANY OF AMERICA, as Subrogee of Wabash KPX, Inc., Plaintiffs-Appellants, v. HENEGHAN WRECKING AND EXCAVATING COMPANY, INC., CONCORD CONSTRUCTION AND MANAGEMENT, INC., and THE CITY OF CHICAGO, Defendants-Appellees (Lorraine P. Phillips, Defendant).–THE ESTATE OF LORRAINE P. PHILLIPS, Counterplaintiff-Appellant, v. HENEGHAN WRECKING AND EXCAVATING COMPANY, INC., Counterdefendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket Nos. 1-13-3376, 1-13-3486 cons. |
| Filed | December 11, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 06-L-012285, 07-L-11991, 07-L-03598; the Hon. Michael Panter, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Andreou & Casson Ltd., of Chicago (Frand J. Andreou, of counsel), for appellant Estate of Lorraine P. Phillips. |
| | Taft Stettinius & Hollister LLP, of Chicago (J. Timothy Eaton and Jonathan B. Amarilio, of counsel), for other appellants. |
| | Traub Lieberman Straus & Shrewsberry LLP, of Chicago (Mark F. Wolfe, Natalie M. Limber, and Katherine M. Kelleher, of counsel), for appellees Heneghan Wrecking & Excavating Company, and Concord Construction & Management, Inc. |
| | Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Stephen G. Collins, Assistant Corporation Counsel, of counsel), for appellee City of Chicago. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion. Presiding Justice Reyes concurred in the judgment and opinion. Justice Gordon specially concurred, with opinion. |

**OPINION**

¶ 1    Plaintiffs, Great American Insurance Company of New York, as subrogee of 600 Wabash L.P. and 600 S. Wabash Commercial, LLC; American Economy Insurance Company, as subrogee of Moonstone Foods Enterprises, LLC; Society Insurance, a mutual company, as subrogee of Charming Food Network, Inc., d/b/a Tamarind; and First National Insurance Company of America, as subrogee of Wabash KPX, Inc. (collectively insurance plaintiffs), and counterplaintiff, the Estate of Lorraine Phillips (Estate),[1] appeal the circuit court's order granting partial summary judgment in favor of defendants, Heneghan Wrecking and Excavating Co., Inc. (Heneghan); Concord Construction and Management (Concord); and the City of Chicago (City), finding defendants, and specifically Heneghan with regard to the Estate, were not strictly liable for the damages caused by the demolition of the building located at 630 S. Wabash Avenue in Chicago, Illinois, commonly known as the Wirt Dexter building. The Estate additionally contends the circuit erred in denying its motion for a judgment notwithstanding the jury's verdict or, in the alternative, its motion for a new trial where the jury's verdict in favor of Heneghan on the Estate's negligence counterclaim was not supported by the evidence. Based on the following, we affirm.

---

[1]Lorraine Phillips is a disabled adult for whom a guardianship estate was opened on June 27, 2012.

¶ 2                                                                 FACTS

¶ 3            The following factual summary was provided by the circuit court:

> "The Plaintiffs filed the underlying subrogation action against the Defendants in which they seek redress for certain purported property damages, lost profits, and expenses incurred as a result of a building fire and subsequent demolition at the building located at 630 South Wabash Avenue, Chicago, Illinois ('subject premises') [or Wirt Dexter building]. On August 24, 2006, a fire ignited within the subject premises purportedly as a result of sparks or slag that came into contact with combustible material while an individual, Efram Lee, allegedly hired by the owner of the subject premises, used an oxygen acetylene torch to cut up two boilers located in the basement of the subject premises. The Plaintiffs allege that the fire caused a substantial portion of the roof and interior supports of the building to become charred and collapse, thereby leaving the exterior walls to self-support themselves.

> On October 25, 2006, the City filed an emergency petition and amended complaint in which it sought authorization from the Municipal Division of the Circuit Court of Cook County, Illinois to immediately demolish the subject premises. That same day, the Honorable Judge Daniel J. Lynch ordered an emergency demolition of the subject premises after finding that it was dangerous, unsafe, and beyond reasonable repair under the Illinois Municipal Code 65 ILCS 5/11-31-1 and the Municipal Code of Chicago 13-12-130. The Court further found that an emergency demolition was the only way to protect the public health, safety, and welfare of the general public. The record reflects that the City accepted bids from various contractors and thereafter hired Heneghan and Concord to conduct the demolition of the subject premises.

> During the afternoon of October 25, 2006, Heneghan began demolition of the subject premises by first removing the bricks and steel columns of the western wall of the building that abutted the Chicago Transit Authority ('CTA') elevated rail tracks until the west wall become level to the height of the tracks. Then, Heneghan removed portions of the south and north walls. Later, during the evening of October 25, 2006, or during the early morning hours of October 26, 2006, the structure collapsed, specifically the north wall, allegedly causing damage to the Plaintiff insureds' building location at 600 South Wabash Avenue, Chicago, Illinois ('600 Wabash')."

Damages also were alleged to the building located at 632 S. Wabash Avenue, which was owned by the Estate as well. In fact, on October 30, 2006, the City authorized Heneghan to demolish the 632 S. Wabash building because the building had been so damaged by fire that it constituted an actual and imminent danger to the public. The building subsequently was demolished pursuant to the City's directive.

¶ 4            The insurance plaintiffs filed a subrogation action against defendants alleging common law and statutory strict liability and negligence for the damage caused to the 600 building and brought a suit against the Estate for negligence and *res ipsa loquitur*. The Estate then filed an action against Heneghan alleging strict liability and negligence for the damage caused to the 632 building. After litigating the sufficiency of the pleadings for approximately six years, the insurance plaintiffs moved for partial summary judgment on their common law and statutory strict liability claims against defendants. Heneghan and Concord responded and filed a cross-motion for partial summary judgment on the same claims. The City opposed the

insurance plaintiffs' motion, but did not file its own cross-motion for partial summary judgment.

¶ 5    In a December 28, 2012, written order, the circuit court entered partial summary judgment in favor of Heneghan and Concord against the insurance plaintiffs and the Estate on the common law strict liability claims, finding the demolition of the Wirt Dexter building did not constitute an ultrahazardous activity based on the factors set forth in section 520 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 520 (1977)). A judgment of no liability was entered in favor of Heneghan and Concord on the common law strict liability claims. The circuit court, however, denied the insurance plaintiffs' motion with regard to its statutory strict liability claim against the City pursuant to section 1-4-7 of the Illinois Municipal Code (65 ILCS 5/1-4-7 (West 2006)), finding there were questions of fact that remained as to whether the demolition was a substantial factor in the collapse of the northern wall of the Wirt Dexter building. The circuit court further denied Heneghan and Concord's motion for partial summary judgment for negligence and *res ipsa loquitur*, finding there were questions of fact preventing entry of judgment as a matter of law regarding whether Heneghan and Concord were in exclusive control of the instrumentality that caused the insurance plaintiffs' injuries.

¶ 6    On February 5, 2013, the circuit court entered an order granting the City's motion to dismiss the insurance plaintiffs' common law strict liability claims in light of its December 28, 2012, order, finding that, because Heneghan and Concord were not engaged in ultrahazardous activity, the City, therefore, was not liable.

¶ 7    Prior to trial, on February 22, 2013, the circuit court considered the City's motion *in limine* to, *inter alia*, bar consideration of the statutory strict liability claim brought against it pursuant to section 1-4-7 of the Municipal Code, arguing the statute's language was "too confusing for the average person of common intelligence to comprehend." Following a lengthy discussion between the parties and the court, the circuit court granted the motion *in limine*. The circuit court opined that the jury should not see the text of the statute because it "fail[ed] to identify any specific type of conduct to which the City of Chicago was required to conform." The circuit court reaffirmed its ruling on March 5, 2013.

¶ 8    A trial ensued on the insurance plaintiffs' negligence claims against defendants, the insurance plaintiffs' negligence claim against the Estate, and the Estate's negligence claim against Heneghan. During the course of trial, the insurance plaintiffs settled their negligence claim with the Estate. On March 13, 2013, a jury returned a verdict in favor of defendants on the remaining claims.

¶ 9    The insurance plaintiffs and the Estate subsequently filed posttrial motions for judgment notwithstanding the verdict or, in the alternative, for a new trial, claiming the circuit court erred in dismissing their strict liability claims and that the jury's verdict was not supported by the evidence. On October 8, 2013, in a written order, the circuit court denied the posttrial motions, finding the strict liability claims failed as a matter of law and upholding the jury's negligence verdicts.

¶ 10    The insurance plaintiffs and the Estate timely appealed.

ANALYSIS

I. Strict Liability

The insurance plaintiffs and the Estate contend the circuit court erred in entering partial summary judgment on their common law strict liability claims in favor of defendants for the demolition of the Wirt Dexter building. According to the insurance plaintiffs and the Estate, the demolition was "ultrahazardous" or "abnormally dangerous" and, therefore, required the imposition of strict liability. The insurance plaintiffs further contend the circuit court erred in barring the jury from considering their statutory strict liability claim. The City responds that any error in rejecting the strict liability claims was harmless where the jury returned a general verdict indicating that the evidence failed to establish defendants proximately caused the damage to the buildings. According to the City, pursuant to the general verdict rule, the jury's verdict foreclosed the insurance plaintiffs' and the Estate's ability to prove strict liability because proximate cause is required to establish strict liability as well as negligence.

We turn first to the City's general verdict argument.

"It is settled law that where several causes of action are charged and a general verdict results, the verdict will be sustained if there are one or more good causes of action or counts to support it." *Moore v. Jewel Tea Co.*, 46 Ill. 2d 288, 294 (1970). The supreme court later advised " '[w]hen there is a general verdict and more than one theory is presented, the verdict will be upheld if there was sufficient evidence to sustain either theory, and the defendant, having failed to request special interrogatories, cannot complain.' " *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 492 (2002) (quoting *Witherell v. Weimer*, 118 Ill. 2d 321, 329 (1987)). Moreover, when multiple defenses are raised, a general verdict rendered by a jury creates a presumption that the jury found in favor of the winning party on every defense raised. *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 102 (2010); see also *Strino v. Premier Healthcare Associates, P.C.*, 365 Ill. App. 3d 895, 904 (2006) (where a defendant raises two or more defenses, under the "two issue" rule, a general verdict creates a presumption that the jury found in favor of the defendant on every one of the defenses). In sum, the supreme court's rulings with regard to general verdicts provide that when multiple claims, theories, or defenses were presented to the jury, without the submission of special interrogatories or separate verdict forms, the return of a general verdict creates a presumption that the evidence supported at least one of the claims, theories, or defenses and will be upheld.

The common thread in the general verdict cases listed above, unlike in the case before this court, was that *multiple* claims, theories, or defenses *were presented to the jury*. In this case, the jury was presented only with a claim for negligence. The jury did not consider a claim for strict liability. As a result, the jury's general verdict finding defendants were not negligent in demolishing the Wirt Dexter building related to the only claim presented, *i.e.*, negligence, and, therefore, only provided a presumption that the evidence did not establish the elements of that claim. Contrary to the City's argument, we cannot presume that the jury's general negligence verdict would have led it to find there was no proximate cause if the strict liability claim also had been presented at trial. We, therefore, find the insurance plaintiffs and the Estate are not foreclosed from challenging the circuit court's summary judgment ruling related to strict liability.

- 5 -

¶ 17    We turn next to the substance of the insurance plaintiffs' and the Estate's claim, namely, that the circuit court erred in entering summary judgment in favor of defendants on their common law strict liability claims.

¶ 18    Summary judgment is appropriate only where "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2006). In assessing whether to grant a motion for summary judgment, a reviewing court must construe the record strictly against the movant and liberally in favor of the nonmoving party. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). The movant bears the initial burden of proof. *Motorola Solutions, Inc. v. Zurich Insurance Co.*, 2015 IL App (1st) 131529, ¶ 103. A defendant may satisfy his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " ' "that there is an absence of evidence to support the nonmoving party's case." ' " *Id*. (quoting *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). We review a trial court's decision regarding summary judgment *de novo*. *Adams*, 211 Ill. 2d at 43.

¶ 19                          A. Common Law Strict Liability

¶ 20    The insurance plaintiffs and the Estate contend that the demolition of a multi-story building within an urban environment constitutes an ultrahazardous activity for which the party performing that activity is strictly liable for any resulting injuries. The insurance plaintiffs and the Estate primarily rely on *Clark v. City of Chicago*, 88 Ill. App. 3d 760 (1980), to support their argument.

¶ 21    A defendant who performs an abnormally dangerous or ultrahazardous activity will be subject to liability for damages resulting from that activity, even if the defendant has exercised the utmost care to prevent the harm. Restatement (Second) of Torts § 19, at 34 (1977). This doctrine for imposing strict liability originated in the English case *Rylands v. Fletcher*, (1868) UKHL 1, (1868) 3 L.R. (H.L.) 330. Liability for an abnormally dangerous or ultrahazardous activity is considered strict "because the defendant's negligence or lack thereof is irrelevant. Rather, the liability arises out of the abnormal danger of the activity itself, and the risk that it creates, of harm to those in the vicinity. It is based on a policy of the law that imposes upon anyone, who for her own purposes creates an abnormal risk of harm to her neighbors, the responsibility of relieving against that harm when it does in fact occur." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 208 (1997) (citing Restatement (Second) of Torts § 19 cmt. d, at 35 (1977)). Our supreme court considers the terms abnormally dangerous and ultrahazardous activity to be synonyms. *Id.*; *Clark*, 88 Ill. App. 3d at 763.

¶ 22    In *Chicago Flood Litigation*, while considering whether pile driving to maintain a tunnel under the Chicago riverbed was abnormally dangerous or ultrahazardous, the supreme court advised that section 520 of the Restatement (Second) of Torts provides the relevant assessment. 176 Ill. 2d at 209; see also *Continental Building Corp. v. Union Oil Co. of California*, 152 Ill. App. 3d 513, 516 (1987); *Miller v. Civil Constructors, Inc.*, 272 Ill. App. 3d 263, 269-70 (1995). Section 520 of the Restatement (Second) of Torts provides the following six factors for determining whether an activity is abnormally dangerous or ultrahazardous:

        "(a) existence of a high degree of risk of some harm to the person, land or chattels
        of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes." Restatement (Second) of Torts § 520, at 36 (1977).

All of the factors are to be considered in making an assessment of a given activity, but every factor need not be present, especially where other factors weigh heavily. *Chicago Flood Litigation*, 176 Ill. 2d at 209-10; Restatement (Second) of Torts § 520 cmt. f, at 38 (1977). That said, the supreme court has instructed that any single factor alone is not necessarily sufficient to establish an activity as abnormally dangerous or ultrahazardous. *Chicago Flood Litigation*, 176 Ill. 2d at 209. Comment f of the Restatement (Second) of Torts advises:

"The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care. In other words, are its dangers and inappropriateness for the locality so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes, without the need of a finding of negligence." Restatement (Second) of Torts § 520 cmt. f, at 37-38 (1977).

Whether an activity is abnormally dangerous or ultrahazardous is a question of law for the court. Restatement (Second) of Torts § 520 cmt. *l*, at 42 (1977).

¶ 23     Keeping these principles in mind, we turn our attention to *Clark*, the case heavily relied upon by the insurance plaintiffs and the Estate to support their position that the demolition of the Wirt Dexter building was *per se* ultrahazardous or abnormally dangerous. In *Clark*, this court held, without analysis, that it was "compelled to conclude" the demolition of a multi-story building within the city of Chicago was an "inherently dangerous activity, as a matter of law." *Clark*, 88 Ill. App. 3d at 764. In a footnote, the *Clark* court stated:

"Although our research discloses no Illinois case which expressly characterizes blasting operations or demolition work as 'ultrahazardous,' Illinois Pattern Jury Instructions, Civil, No. 115.01 (2d ed. 1971) does provide as follows:

'115.01 Ultrahazardous Activities-Absolute Liability

When a person carries on an ultrahazardous activity such as _____ (e.g., blasting), he is liable for any [injury] [property damage] proximately caused by that activity regardless of the amount of care used ***.'

The comment to this instruction cites blasting and demolition cases including *Sherman House Hotel Co*. and *Van Auken*." *Id*. at 763 n.2.

The cases referenced in the footnote, *i.e.*, *Sherman House Hotel Co. v. Gallagher*, 129 Ill. App. 557 (1906), and *Van Auken v. Barr*, 270 Ill. App. 150 (1933), however, do not establish, as a matter of law, that demolition is inherently dangerous.

¶ 24     In *Sherman House Hotel Co.*, a passerby was injured when a piece of iron fell on his head from a balcony repair project. *Sherman House Hotel Co.*, 129 Ill. App. at 557-58. The court concluded that "[t]o remove heavy material from the front of a building standing close up to the sidewalk of a crowded city street where great numbers of people are constantly passing, without any barrier to prevent persons from passing under the work, or any protection against

material always likely to fall when such work is being done, is, we think, in itself inherently dangerous, no matter how skillfully done." *Id*. at 559-60. The court noted that there were barriers erected on the other part of the street corner to protect people from harm related to the balcony repair, but no similar barriers were erected on the side of the corner where the individual was hurt. *Id*. at 560.

¶ 25    In *Van Auken*, an individual was injured when a brick fell off a wall of a three-story building being "razed" on a busy urban street. *Van Auken*, 270 Ill. App. at 152-53. The court found that "[w]e know of no way to tear down a brick wall that would not be dangerous to people walking along the same unless there was precaution taken to protect the public from the pieces of bricks falling during the operation. The only way to take down the walls of a brick building is in some way to loosen the bricks, and whatever way it is done there is danger that the brick may fall from the wall. If it is in a place where people are passing by, the falling bricks are extremely liable to hurt some one [*sic*]." *Id*. at 155.

¶ 26    In both *Sherman House Hotel Co.* and *Van Auken*, the court examined whether "proper precautions" were taken to avoid injury or damages. In other words, both courts considered the negligence of the contractors in those cases. The supreme court, however, has since made it clear that, in order to impose strict liability for inherently dangerous or ultrahazardous activity, the activity must be abnormally dangerous in and of itself regardless of the actor's negligence or lack thereof. *Chicago Flood Litigation*, 176 Ill. 2d at 208.

¶ 27    Moreover, appellate court cases decided after *Clark* have adopted the section 520 Restatement (Second) of Torts factors in analyzing whether an activity is abnormally dangerous. *Continental Building Corp.*, 152 Ill. App. 3d at 516; *Miller*, 272 Ill. App. 3d at 269-70. Importantly, in *Chicago Flood Litigation*, the supreme court stated that *Clark* only considered the first and third Restatement factors and "liability for abnormally dangerous or ultrahazardous activities is not a matter of these factors alone. All of the factors are to be considered." *Chicago Flood Litigation*, 176 Ill. 2d at 209. In sum, contrary to the insurance plaintiff's and the Estate's insistence that *Clark* ends our analysis because demolition is *per se* inherently dangerous, we will apply the factors set forth by section 520 of the Restatement (Second) of Torts to the circumstances of the case before us. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008) (*stare decisis* requires courts to follow the decisions of higher courts, but does not bind courts to the decisions of equal or inferior courts).

¶ 28    Heneghan and Concord concede that application of the first four Restatement factors indicates the demolition of the Wirt Dexter building was abnormally dangerous or ultrahazardous. As the circuit court explained:

> "Regarding the first factor, the Court notes that a high degree of some harm to persons, land or chattels was present because the record reflects that the point at which Heneghan began the demolition of the building, the interior portions of the building as well as the roof had already collapsed leaving four freestanding walls without lateral bracing with a high probability of collapse. As to the second factor, the record shows that if the entire building collapsed or even one wall fell, serious damage to the surrounding structures could occur as a result. Concerning the third factor, the record shows that Heneghan was unable to eliminate the risk of collapse even if it used the utmost exercise of reasonable care because the structure was still burning when the demolition began and the exterior walls were severely weakened

from the heat of the fire as well as the alleged disrepair to the structure of the building that existed prior to the fire. Finally, the Court notes, and the parties agree, that demolishing a building in the business district of Chicago is not a matter of common usage under the fourth factor."

We, therefore, focus our analysis on the final two factors of section 520 of the Restatement (Second) of Torts.

¶ 29 As stated, the fifth factor considers the inappropriateness of the activity to the place where it was carried out. Restatement (Second) of Torts § 520(e), at 36 (1977). With regard to the fifth factor, Comment j of the Restatement (Second) of Torts section 520 advises:

> "There are some highly dangerous activities, that necessarily involve a risk of serious harm in spite of all possible care, that can be carried on only in a particular place. Coal mining must be done where there is coal; oil wells can be located only where there is oil; and a dam impounding water in a stream can be situated only in the bed of the stream. If these activities are of sufficient value to the community (see Comment *k*), they may not be regarded as abnormally dangerous when they are so located, since the only place where the activity can be carried on must necessarily be regarded as an appropriate one." Restatement (Second) of Torts § 520 cmt. j, at 40 (1977).

¶ 30 The circuit court concluded that the fifth factor weighed against imposing strict liability. In particular, the circuit court found the demolition could only take place at the subject premise, leaving Heneghan and Concord with no control in determining the appropriateness of the location in which to carry out the activity. Moreover, the circuit court noted that "conducting an immediate demolition of the subject premises was the best way to ensure the safety and welfare of the general public as well as the surrounding property."

¶ 31 We agree with the circuit court. The activity in question, namely, the demolition of the Wirt Dexter building, had to be performed at the building location. The building could not be relocated from downtown Chicago prior to demolishing it. As a result, we conclude that the fifth Restatement factor considering the appropriateness of the demolition at the location of the Wirt Dexter building weighed against a finding of strict liability. Our finding is supported by *Chicago Flood Litigation*, where the supreme court similarly determined that the fifth Restatement factor weighed against a finding of strict liability because the maintenance of the tunnel under the riverbed, which ultimately caused the breach of the tunnel and widespread damage in Chicago, necessarily had to be performed where the tunnel was located. *Chicago Flood Litigation*, 176 Ill. 2d at 212.

¶ 32 The insurance plaintiffs argue that, because Heneghan and Concord had no choice in determining the location of the activity, this factor should be considered a "nullity." We recognize that the fifth factor incentivizes an actor to relocate a dangerous activity to a place where damage can be minimized. See *Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.*, 916 F.2d 1174, 1777 (7th Cir. 1990). We, however, do not find that Heneghan and Concord's inability to relocate the building to a less densely populated location in order to perform the demolition reduced this factor to a nullity. Instead, assuming the demolition was of sufficient value to the community, which we address in the sixth factor, the demolition could not be regarded as abnormally dangerous at the building's location, since the only place where the activity could be carried out "must necessarily be regarded as an appropriate one." Restatement (Second) of Torts § 520 cmt. j, at 50 (1977).

- 9 -

¶ 33    Moreover, contrary to the insurance plaintiffs' argument, our conclusion does not create a "bright line rule" that the fifth factor always weighs against classifying structural demolition as abnormally dangerous. The fifth factor requires an assessment of the appropriateness of the activity in the given location. We can conceive of circumstances in which demolition of a structure at its existing location would not be appropriate; for example, during certain times of the day or year in a densely populated and heavily trafficked area if the situation did not present an emergency or when using particular methods inappropriate for the given environment.

¶ 34    In sum, we find the fifth factor of section 520 of the Restatement (Second) of Torts weighed against a finding of strict liability.

¶ 35    The sixth factor, as stated prior, focuses on the extent to which the activity's value to the community is outweighed by its dangerous attributes. Restatement (Second) of Torts § 520(f), at 36 (1977). With regard to the sixth factor, Comment k of the Restatement (Second) of Torts section 520 advises:

> "Even though the activity involves a serious risk of harm that cannot be eliminated with reasonable care and it is not a matter of common usage, its value to the community may be such that the danger will not be regarded as an abnormal one. This is true particularly when the community is largely devoted to the dangerous enterprise and its prosperity largely depends upon it. Thus the interest of a particular town whose livelihood depends upon such an activity as manufacturing cement may be such that cement plants will be regarded as normal activity for that community notwithstanding the risk of serious harm from the emission of cement dust." Restatement (Second) of Torts § 520 cmt. k, at 51 (1977).

¶ 36    The circuit court concluded that the sixth factor weighed against imposing strict liability, finding the emergency demolition was for the benefit of the community's health, safety, and welfare. More specifically, the circuit court found that the demolition allowed the fire department greater access to the building to control the five-alarm fire still burning inside, permitted residents to return to their evacuated homes in the surrounding area, permitted nearby businesses to reopen, reopened the surrounding major thoroughfares and streets, and allowed the CTA to return to normal operation for the elevated tracks adjacent to the building. The circuit court rejected the insurance plaintiffs' and the Estate's contention that their property interest was outweighed by the benefits of the community "because it would be illogical to prioritize the damage to 600 Wabash over the potential disaster that would have ensued if the building collapsed onto a street while cars or pedestrians were present or over the elevated tracks further hampering the travel of over 230,000 Chicagoans for an indeterminate amount of time."

¶ 37    The insurance plaintiffs concede that "[a]lthough the demolition significantly damaged 600 South Wabash, it plainly benefited the community as a whole." We conclude that the value of the Wirt Dexter building demolition outweighed its dangerous attributes where the building caused widespread emergency circumstances affecting citizens, the surrounding buildings, and the adjacent CTA elevated tracks. Our decision is again supported by *Chicago Flood Litigation*, where the supreme court determined that management of the underground tunnel was a necessary urban activity providing value to the community and, thus, strict liability should not be imposed. *Chicago Flood Litigation*, 176 Ill. 2d at 212. In sum, we find

the sixth factor of section 520 of the Restatement (Second) of Torts weighed against a finding of strict liability.

¶ 38    Overall, although four of the six factors weighed in favor of a finding of strict liability, the two factors that weighed against a strict liability finding weighed heavily in that direction. See *id.* at 209-10. Simply stated, the circumstances of the demolition of the Wirt Dexter building do not support a finding of strict liability. Neither Heneghan nor Concord "created" the emergent situation that led to the necessity for the demolition itself. See *id.* at 208 (citing Restatement (Second) of Torts § 519 cmt. d, at 35 (1977)). Moreover, the demolition was absolutely necessary to the functioning of the surrounding downtown area. Further, the demolition was *not* for the purposes of Heneghan and Concord, even though the companies were compensated for their work. Finally, the insurance plaintiffs and the Estate were not left without a cause of action where they were able to pursue Heneghan and Concord under a negligence theory of liability. We, therefore, conclude that public policy did not support the imposition of strict liability upon Heneghan and Concord for the damages resulting from the demolition. Accordingly, we hold the circuit court did not err in granting partial summary judgment in favor of Heneghan and Concord on the common law strict liability claims asserted by the insurance plaintiffs and the Estate.

¶ 39                         B. Statutory Strict Liability

¶ 40    The insurance plaintiffs additionally contend the circuit court erred in disposing of their statutory strict liability claim brought against the City pursuant to section 1-4-7 of the Municipal Code. In particular, the insurance plaintiffs argue the City authorized Heneghan and Concord to demolish the Wirt Dexter building and the contractors were acting as the City's agents when they carried out the work. The insurance plaintiffs maintain that, as a result, the City was liable for the damage caused by the unsafe building.

¶ 41    The circuit court granted a motion *in limine* advanced by Heneghan and Concord barring the jury from considering the insurance plaintiffs' section 1-4-7 claim. The motion *in limine*, therefore, effectively was more akin to a motion for summary judgment, which disposed of the claim. Although we normally review a circuit court's decision on a motion *in limine* for an abuse of discretion, where the issue involves a question of law, as here, the standard of review is *de novo*. *Bank of America v. WS Management, Inc.*, 2015 IL App (1st) 132551, ¶ 76.

¶ 42    Section 1-4-7 of the Municipal Code provides:

> "The municipality shall be liable for any injury occasioned by actionable wrong to property by the removal, destruction or vacation, in whole or in part, of any unsafe or unsanitary building, by any municipal officer, board or employee charged with authority to order or execute such removal, destruction or vacation, if such removal, destruction or vacation is pursuant to valid statutes, ordinances or regulations, and if such officer, board or employee has acted in good faith, with reasonable care and probable cause." 65 ILCS 5/1-4-7 (West 2006).

¶ 43    The question before us is whether the statute, which requires that the complained-of injury to property be caused by an "actionable wrong," imposes strict liability on the municipality or whether the municipality or its agent must be negligent in order for the statute to apply. The parties have not cited, and our research has not uncovered, any cases interpreting this precise question based on the language of the statute. We, therefore, must rely on the principles of statutory interpretation to resolve the question.

- 11 -

¶ 44    The primary goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 20. The best indication of legislative intent is the language of the statute itself, applying the plain, ordinary, and popular meaning to the words used. *Id.* ¶ 21. If the statutory language is clear and unambiguous, it must be given effect without resort to other aids of construction. *Id.* Courts may not depart from the plain language and meaning of a statute by reading into it exceptions, limitations, or conditions unexpressed by the legislature. *Id.*

¶ 45    Here, the language of the statute, in relevant part, provides that a "municipality shall be liable for any injury occasioned by actionable wrong to property." 65 ILCS 5/1-4-7 (West 2006). The statute does not define "actionable." Turning to the popular meaning of the term, Black's Law Dictionary defines "actionable" as "[f]urnishing the legal ground for a lawsuit or other legal action." Black's Law Dictionary 36 (9th ed. 2009). Therefore, using the definition in conjunction with the language of the statute, a municipality will be liable for any injury caused by any municipal officer, board, or authority where a "wrong" is committed during the removal, destruction, or vacation of the property, thereby presenting grounds for a cause of action. A "wrong" intimates a breach of some sort. In attempting to define "injury" within the context of another statute, this court has described an "actionable wrong" as a breach of one's legal right for which the law allows for a cause of action. *Shumpert v. Chicago Transit Authority*, 30 Ill. App. 2d 232, 235 (1961). In short, pursuant to the language of the statute, an "actionable wrong" requires the breach of duty in order for a cause of action to arise. As a result, we find that the statute requires negligence for its application. Section 1-4-7 of the Municipal Code, therefore, is not a strict liability statute.

¶ 46    The insurance plaintiffs argue that section 1-4-7 must be a strict liability statute, otherwise the language within the statute would be rendered inconsistent. More specifically, the insurance plaintiffs argue that the statute cannot require negligence for its applicability where it also requires that "such officer, board or employee has acted in good faith, with reasonable care and probable cause" (65 ILCS 5/1-4-7 (West 2006)). Contrary to the insurance plaintiffs' argument, we do not find the quoted language to be inconsistent with our conclusion that the statute requires some form of negligence to satisfy the requirement of an "actionable wrong." It is clear from the language of the statute that the intent of the legislature was to limit a municipality's liability to instances where, in the process of the "removal, destruction or vacation" of a building, a property is damaged as a result of the negligence of an agent of the municipality, so long as the individual authorizing the "removal, destruction or vacation" had legal support for the order and exercised his or her authority "in good faith, with reasonable care and probable cause." *Id.*

¶ 47    We find support for our conclusion that section 1-4-7 of the Municipal Code requires negligence in *Turpen v. City of St. Francisville*, 145 Ill. App. 3d 891 (1986), and *City of Chicago v. Vickers*, 8 Ill. App. 3d 902 (1972). In *Turpen*, the Fifth District Appellate Court held that the requirements of section 1-4-7 of the Municipal Code were satisfied where the negligence of the contractors performing an emergency building demolition on the authority and direction of the mayor resulted in damages. *Turpen*, 145 Ill. App. 3d at 896-98. Additionally, in *Vickers*, this court found that, even though a demolition was performed by an independent contractor, his negligence, which caused damage to adjoining properties, was imputed to the City and section 1-4-7 was applicable. *Vickers*, 8 Ill. App. 3d at 905.

¶ 48    Our conclusion is further supported by the language of other statutes that expressly impose strict liability, or have been interpreted to do so. In section 2(5) of the Consignment of Art Act (815 ILCS 320/2(5) (West 2006)), the legislature provided that "[t]he art dealer shall be strictly liable for the loss of or damage to the work of fine art while it is in the art dealer's possession." That statute expressly imposes strict liability. In comparison, in section 19 of the Metropolitan Water Reclamation District Act (70 ILCS 2605/19 (West 2006)), the legislature provided that "[e]very sanitary district shall be liable for all damages to real estate within or without such district which shall be overflowed or otherwise damaged by reason of the construction, enlargement or use of any channel, ditch, drain, outlet or other improvement under the provisions of this act." Courts have interpreted the language of that statute to impose strict liability. See, *e.g.*, *Pineschi v. Rock River Water Reclamation District*, 346 Ill. App. 3d 719, 725-26 (2004). Neither of the examples cited contain language similar to requiring an "actionable wrong" similar to the requisite language in section 1-4-7 of the Municipal Code.

¶ 49    Because we have found that section 1-4-7 of the Municipal Code is not a strict liability statute, we find the circuit court did not err in barring the jury from considering the insurance plaintiffs' strict liability claim based on that statute.

¶ 50                                              II. Negligence

¶ 51    The Estate additionally contends the circuit court erred in denying its motion for a judgment notwithstanding the jury's verdict or, in the alternative, its motion for a new trial where the jury's verdict in favor of Heneghan was not supported by the evidence.

¶ 52    A judgment notwithstanding the verdict will be granted only where all the evidence, viewed in a light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Washington v. City of Chicago*, 188 Ill. 2d 235, 238 (1999). In considering the denial of a motion for a judgment notwithstanding the verdict, we do not weigh the evidence or assess the credibility of the witnesses; rather, a reviewing court may only consider the evidence and any inferences therefrom in a light most favorable to the nonmovant. *Mizowek v. De Franco*, 64 Ill. 2d 303, 309-10 (1976). We review a circuit court's denial of a motion for a judgment notwithstanding the verdict *de novo*. *Washington*, 188 Ill. 2d at 238-39.

¶ 53    The Estate raised a counterclaim sounding in negligence against Heneghan for the damage to and demolition of the 632 S. Wabash building. In response, Heneghan filed affirmative defenses stating, in relevant part, that the Estate was contributorily negligent for hiring Efram Lee, who was unqualified to perform the requisite work on the Wirt Dexter building, and for failing to ensure adequate fire safety precautions were taken while the work was performed. The jury returned a general verdict in favor of Heneghan and against the Estate on its negligence counterclaim. The Estate now argues that the circuit court erred in denying its motion for judgment notwithstanding the jury's verdict because no evidence was presented to the jury demonstrating that Lorraine Phillips was negligent in hiring Lee or responsible for anything more than having created the condition which led to the fire in the Wirt Dexter building.

¶ 54    To establish an action for negligence, the plaintiff must present facts sufficient to demonstrate the existence of a duty, a breach of that duty, and injury to the plaintiff

proximately caused by the breach. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004).

¶ 55     Based on our review, we conclude the evidence, viewed in a light most favorable to Heneghan, did not so overwhelmingly favor the Estate that no contrary verdict could ever stand. The jury was presented with conflicting evidence that both the Estate and Heneghan were negligent. More specifically, the jury heard evidence that the Estate was negligent in hiring an unqualified individual to perform the necessary repairs to the Wirt Dexter building, as well as evidence that Heneghan was negligent in demolishing the Wirt Dexter building, which caused subsequent damage to 632 S. Wabash and led to its demolition. As a reviewing court, we should "not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from evidence which did not greatly preponderate either way." *Maple v. Gustafson*, 151 Ill. 2d 445, 452-53 (1992). Given the conflicting evidence, particularly the significant evidence of the Estate's negligence presented by Heneghan, we find the circuit court did not err in denying the Estate's motion for a judgment notwithstanding the verdict.

¶ 56     We turn next to the Estate's alternative argument regarding the denial of its motion for a new trial. When considering a motion for a new trial, the trial court, after weighing the evidence, will set aside a jury's verdict and order a new trial only " 'if the verdict is contrary to the manifest weight of the evidence.' " *Id*. at 454 (quoting *Mizowek*, 64 Ill. 2d at 310). A verdict is against the manifest weight of the evidence " 'where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence.' " *Id*. (quoting *Villa v. Crown Cork & Seal Co.*, 202 Ill. App. 3d 1082, 1089 (1990)). We will not reverse a circuit court's ruling on a motion for a new trial unless it is affirmatively shown that the court clearly abused its discretion. *Id*. at 455. In determining whether a circuit court abused its discretion, this court considers whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. *Id*.

¶ 57     We conclude that the Estate failed to satisfy its burden to establish its entitlement to a new trial. The jury returned a general verdict for Heneghan and did not specify findings of fact. The Estate did not submit a special interrogatory regarding the basis of the jury's findings. As stated earlier, when a defendant raises two or more defenses including contributory negligence, as was the case here, a general verdict creates a presumption that the jury found in favor of the defendant on every one of the defenses. *Strino*, 365 Ill. App. 3d at 904. At the close of trial, the jury was instructed to present Verdict Form J if either it found: (1) for Heneghan and against the Estate or (2) that the Estate's contributory negligence was more than 50% of the total proximate cause of the injury or damage for which recovery was sought. The jury returned Verdict Form J, thereby creating a presumption that it found in favor of Heneghan on every defense raised, including that the Estate was greater than 50% negligent and thus barred from recovery. See *Lazenby*, 236 Ill. 2d at 101-02. Again, as stated earlier, the supreme court has held that " '[w]hen there is a general verdict and more than one theory is presented, the verdict will be upheld if there was sufficient evidence to sustain either theory, and the [moving party], having failed to request special interrogatories, cannot complain.' " *Dillon*, 199 Ill. 2d at 492 (quoting *Witherell*, 118 Ill. 2d at 329). Based on our review of the record, we find the evidence was sufficient to sustain the jury's verdict on the theory of contributory negligence.

¶ 58    The uncontroverted evidence demonstrated that a five-alarm fire destroyed the 100-year-old Wirt Dexter building. The building had fallen into disrepair and lacked running water, smoke detectors, and working sprinklers. The fire was caused by Lee, an unlicensed contractor hired by Phillips to complete work in the basement of the building. Lee, in turn, hired a number of day laborers to assist in removing two boilers encased in brick from the building basement. Neither Lee nor Phillips obtained a permit for the work. Nevertheless, while using torches to cut the boilers into sections, some sparks or "slag" ignited a pile of discarded wood, which then started the fire that swept through the entire six-story building. The Chicago fire department eventually brought the fire under control, but the building had undergone extensive damage to the roof, flooring, and interior wood framing. Moreover, the trial testimony demonstrated that there was damage to the 632 S. Wabash building prior to the start of Heneghan's demolition of the Wirt Dexter building. In fact, there was a hole in the roof and extensive water damage. The City even authorized Heneghan to demolish the vacant 632 S. Wabash building. In addition, the evidence at trial demonstrated that Heneghan attempted to prevent bricks from falling near the 632 S. Wabash building during the demolition of the Wirt Dexter building. Testimony revealed that, while operating a crane and using a clamshell bucket, Heneghan's employee placed the removed bricks in the center of the Wirt Dexter property, away from the adjacent properties.

¶ 59    In sum, the evidence presented to the jury was sufficient for it to conclude the Estate was more than 50% negligent, thereby barring recovery. Because the jury's verdict was not against the manifest weight of the evidence, we conclude the circuit court did not abuse its discretion in refusing to grant a new trial.

¶ 60                                  CONCLUSION

¶ 61    We affirm the judgment of the circuit court.

¶ 62    Affirmed.

¶ 63    JUSTICE GORDON, specially concurring.

¶ 64    As I explain below, I concur in section II of the majority's opinion which discusses the negligence claim, but I must write separately concerning the strict liability claims, which are discussed in section I of the majority's opinion. I concur in the result of section I, which is an affirmance, but for different reasons, which I explain below in section II of this special concurrence.

¶ 65                                  I. Overview

¶ 66    In the case at bar, plaintiff insurance companies filed a subrogation action against defendant construction companies and the City of Chicago (City) alleging common law and statutory strict liability and negligence for the damage caused to a building as a result of the demolition of a nearby building. Plaintiff Phillips Estate then filed an action against one of the defendant companies also alleging negligence and strict liability in connection with the same demolition, but with respect to a different building. The two cases have been consolidated.

- 15 -

¶ 67    In their appeal, plaintiff insurance companies seek a new trial on the sole ground that the trial court erred in denying them the right to present their claims of strict liability to the jury. As a result, the jury trial concerned only negligence, and the jury found against them on their negligence claims.

¶ 68    In its appeal, the Estate challenges the trial court's strict liability ruling and also claims that the jury's negligence verdict was against the manifest weight of the evidence. As I stated above, I concur in section II of the majority's opinion which concluded that the jury's verdict on the negligence claim was not against the manifest weight of the evidence. It is only with respect to plaintiffs' strict liability claims that I write separately, for reasons that I now explain below.

¶ 69                              II. Strict Liability

¶ 70    Defendant City argues on appeal that, even if the strict liability claims were available to plaintiffs, any error by the trial court in rejecting these claims was harmless and thus would not warrant a new trial.

¶ 71    "[A]bsent prejudice, there is no reversible error." *Kovera v. Envirite of Illinois, Inc.*, 2015 IL App (1st) 133049, ¶ 57. "The party seeking reversal bears the burden of establishing such prejudice." *Kovera*, 2015 IL App (1st) 133049, ¶ 55. Thus, on this appeal, plaintiffs bear the burden of showing prejudice from the trial court's ruling barring them from presenting their strict liability claims.

¶ 72    As I observed above, the trial in the case at bar proceeded on claims of negligence. To succeed on a negligence claim, a plaintiff must prove that: (1) a defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the plaintiff suffered damage; and (4) the plaintiff's damage was proximately caused by the defendant's negligence. *Duffy v. Togher*, 382 Ill. App. 3d 1, 14 (2008). At trial, defendants argued (1) that they did not breach their duty and (2) that they did not proximately cause plaintiffs' damage. The jury returned general verdicts in favor of defendants. Plaintiffs did not offer special interrogatories, so we do not know which defense the jury found persuasive.

¶ 73    When the plaintiffs fail to offer special interrogatories, and the jury finds against them, a reviewing court will presume that the jury found in favor of the defendants on "every defense raised." *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 102 (2010); *Strino v. Premier Healthcare Associates, P.C.*, 365 Ill. App. 3d 895, 904 (2006) (where both parties fail to request special interrogatories, and a defendant presents more than one defense, a reviewing court will presume that the jury found in the defendant's favor on every defense presented). As a result, we must presume that the jury found in favor of defendants on the issue of proximate cause.

¶ 74    Defendant City argues that proximate cause is also required to prove strict liability and that the proximate cause analysis is the same for both types of claims, and plaintiffs do not dispute these two points. Defendant City argues that, as a result of plaintiffs' failure to seek special interrogatories, any error in denying their strict liability claims is harmless, in light of the fact that the jury is presumed to have found in defendants' favor on the issue of proximate cause.

¶ 75    In response, plaintiff insurance companies argue that these are different causes of action. However, the same element is required in both causes of action, and the question is should we order the trial court to litigate the same issue of proximate cause–twice–with respect to the same parties and the same events under the law as made and provided.

¶ 76    Plaintiffs argue that the presumption applies only to defenses that were presented to the jury. However, this defense, that defendants' actions were not the proximate cause of plaintiffs' damages, was presented to the jury.

¶ 77    Plaintiffs argue that the jury's verdict creates a presumption that can be rebutted and that the record establishes that it was breach of duty that the jurors failed to find, but that they did find proximate cause.

¶ 78    "The term 'proximate cause' encompasses two distinct requirements: cause in fact and legal cause." *Young v. Bryco Arms*, 213 Ill. 2d 433, 446 (2004). "The first requirement, cause in fact, is present when there is a reasonable certainty that a defendant's acts caused the injury or damage." (Internal quotation marks omitted.) *Young*, 213 Ill. 2d at 446. "In deciding this question, we first ask whether the injury would have occurred absent the defendant's conduct." *Young*, 213 Ill. 2d at 446. "In addition, when, as here, there are multiple factors that may have combined to cause the damage, we ask whether the defendant's conduct was a material element and a substantial factor in bringing about the [damage]." *Young*, 213 Ill. 2d at 446. "The second requirement, legal cause, is established only if the defendant's conduct is so closely tied to the plaintiff's damage that [the defendant] should be held legally responsible for it." (Internal quotation marks omitted.) *Young*, 213 Ill. 2d at 446. "The question is one of public policy–How far should a defendant's legal responsibility extend for conduct that did, in fact, cause the harm?" *Young*, 213 Ill. 2d at 446. "The proper inquiry regarding legal cause is an assessment of foreseeability, in which we ask whether the injury is of a type that a reasonable person would see as a likely result of his conduct." *Young*, 213 Ill. 2d at 445-46. Proximate cause is generally a question of fact. *Young*, 213 Ill. 2d at 446.

¶ 79    In their appellate brief, plaintiff insurance companies point to only one piece of evidence which they claim conclusively establishes proximate cause, namely, the testimony of defendants' demolition expert that defendant Heneghan's piling of bricks, along the interior northern wall of the building that was being demolished, was a contributing cause of that wall's collapse onto plaintiffs' insured's property. However, a contributing cause is not necessarily a material and substantial cause which is needed to establish cause in fact, and it is not necessarily a foreseeable cause which is needed to establish legal cause. *Young*, 213 Ill. 2d at 446. Thus, we do not find this argument persuasive.

¶ 80    Plaintiffs ask us to consider, on policy grounds, that a contrary ruling will cause the trial courts to be inundated with the filing of special interrogatories. From a policy standpoint, it would be better to be inundated with special interrogatories than duplicative trials–concerning the same events, among the same parties, and with the risk of inconsistent jury determinations. Once defendants' motions for summary judgment and to dismiss were granted with respect to strict liability, plaintiffs knew that the likelihood was great that they would file an appeal on this issue, if they lost at trial. Plaintiffs also knew that it was likely that defendants would assert the same proximate cause defense if the strict liability claims were later tried. Thus, choosing not to submit special interrogatories was a strategic decision about which plaintiffs cannot now complain on appeal.

¶ 81    Plaintiff insurance companies also argue that, while defendant City raised this issue, defendant construction companies forfeited it because they raised it in their brief only with respect to plaintiff Estate. However, forfeiture is a limitation on the parties, not the courts, and I would decline to apply the forfeiture rule here when the issue was thoroughly briefed for our review. See *Ritacca v. Girardi*, 2013 IL App (1st) 113511, ¶ 19 (forfeiture is a limit on the parties not the court (citing *People v. Normand*, 215 Ill. 2d 539, 544 (2005))); *People v. Leach*, 2012 IL 111534, ¶ 61 ("we may exercise our discretion to review an otherwise forfeited issue when it is inextricably intertwined with other issues properly before the court").

¶ 82    For the foregoing reasons, and these reasons alone, I specially concur in affirming the trial court's ruling on the strict liability claims. *Nichols v. City of Chicago Heights*, 2015 IL App (1st) 122994, ¶ 25 ("In our review, we may affirm on any basis found in the record regardless of whether the trial court relied on those grounds or whether its reasoning was correct."). As for *Clark*, which the majority chooses not to follow, it is still good law. *Clark v. City of Chicago*, 88 Ill. App. 3d 760, 763-64 (1980); see also *American Country Insurance Co. v. Kraemer Brothers, Inc.*, 298 Ill. App. 3d 805, 814 (1998) (citing *Clark* with approval). The decision of whether to keep or overrule *Clark* is the job of the supreme court. In *Chicago Flood*, the supreme court discussed *Clark* in a manner that could be construed as criticizing it. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 209 (1997) (discussing *Clark*). However, after discussing it, the supreme court also chose not to overrule *Clark*, as it certainly had the authority to do and as the supreme court chose to do elsewhere in the same opinion with respect to other cases. *E.g.*, *Chicago Flood*, 176 Ill. 2d at 196 ("Cases holding to the contrary [citations] are overruled on this point."). As a result, I do not concur with the analysis of the majority in section I of its opinion. I concur only in the result, which is to affirm, and only for the reasons specified in this special concurrence.